**SEVENTEEN HUNDRED PEORIA, INC.,**
Plaintiff in Error,

v.

**CITY OF TULSA and D. N. Irwin,**
Defendants in Error.

No. 41050.

Supreme Court of Oklahoma.

Aug. 2, 1966.

Rehearing Denied Sept. 27, 1966.

Second Rehearing Denied Jan. 24, 1967.

Floyd L. Walker, Tulsa, for plaintiff in error.

Charles E. Norman, City Atty., Louis Levy, Asst. City Atty., Tulsa, for defendants in error.

DAVISON, Justice.

The parties occupy the same relative positions in this court as they did in the lower court and will be referred to herein by name or as plaintiff and defendants.

Plaintiff appeals from a judgment of the lower court wherein, upon trial to the court, it was found and adjudged that the lower level of an apartment house in process of construction was not a basement and therefore should be considered as a story in determining the height of the apartment in terms of stories. The court further found and adjudged that the apartment house was three stories in height and that under the city's ordinances the plaintiff, as owner of the apartment house under construction, was required to install a sprinkler system therein for fire prevention purposes. In the judgment the court directed plaintiff to make such installation.

The plaintiff filed its action December 19, 1963, under the provisions of the Declaratory Judgment Act, 12 O.S.1961, § 1651 et seq., alleging, that it was the owner of a large apartment building then in course of construction, that the lower level under the south portion thereof was defined as a basement by the city ordinances (hereinafter narrated or quoted) and was not to be counted as a story under the ordinance requiring an apartment house of three stories to be sprinklered, that the city was about to stop construction unless the sprinkler system was installed, and prayed that the court determine whether the ordinances required installation of a sprinkler system, and that the city and its agents be restrained and enjoined from interfering with construction of the apartment house. The court issued a temporary restraining order. The defendants filed no pleading or answer.

Upon trial of the matter on January 29, 1964, the court denied the prayer for injunction and rendered the judgment recited above. The temporary restraining order was continued in force pending disposition of this appeal. At the time of trial the plaintiff admitted that the construction of the building was at a stage where the

sprinkler system could have been installed without any alteration of prior construction. The building has been completed without such installation.

When the plans for the 54 unit apartment house were submitted to the city for approval the defendant Irwin (City Building Inspector) and an officer of plaintiff agreed upon construction of two fire walls from the ground to above roof line, whereby the long 261 foot structure was divided into three equal divisions of 87 feet each. It is the south division or portion that is the subject of this controversy. After some discussion of the plan as to whether a tier of apartments beneath a part of the south division was a story, and when added to the two stories of apartments above, constituted a three story apartment house requiring a sprinkler system, the defendant Irwin endorsed thereon "sprinkler." When the building permit was issued by the city on September 19, 1963, there was written therein "Sprinkle-south end." The plaintiff's officer accepted the city's decision with some expressed reservation as to whether the lower level under the south division was, under the ordinances, to be counted in determining the height in stories of the south one-third division.

The pertinent city ordinances provide:

" 'Basement means a story of a building or structure having one-half or more of its clear height below grade. Also see "Story".

" 'Court means an open, uncovered, unoccupied space on the same lot with a building;

" 'inner court means any court other than an outer court or yard;'

" 'Grade, with reference to a building or structure, means the average elevation of the ground adjoining the building or structure on all sides.'

" 'Height, as applied to a building, means the vertical distance from grade to the average elevation of the roof of the highest story: "height" of a building in stories does not include basements—see "Story".

" 'Multifamily house means a building or portion thereof containing three or more dwelling units; including tenement house, apartment house, flat.' "

" 'Sprinklered means equipped with an approved automatic sprinkler system.' "

" 'Story means that part of a building comprised between a floor and the floor or roof next above. * * *' "

" 'Multifamily houses of wood frame construction shall not exceed the height limits given in table 401 nor shall they exceed 2 stories in height except that if sprinklered they may be 3 stories in height.' "

The apartment house extends 261 feet north and south and faces west on Peoria Avenue in the City of Tulsa. From the front it appears to be a two story structure because of a rising terrace along that side. The roof extends the entire length except where broken by the above mentioned fire walls. The area it rests on slopes down to the south and southeast.

The south one-third lying south of the fire wall has been recognized by the parties as being a "building" under city ordinances. It is 87 feet north and south and 80 feet east and west and in the approximate center thereof is a rectangular inner court (open to the sky) about 33 feet wide and 39 feet long with a swimming pool in the center. Entrance to the inner court and to apartments surrounding it and to stairs that serve the top floor is by a hall opening to the front or west. The lower tier of apartments that are located under the upper two stories are 24 feet in depth and extend along the south and east sides of the building, with their floors slightly higher than the parking lot on the south and east of the building. Entrance to these apartments is from the parking lot. The south side of the building has three tiers of windows and appears from that side to be a three story structure.

Both sides recognize that the ordinances, supra, control as to whether the bottom level under the south part of the building is, or is not, a basement. If it is not a basement then it is to be counted in determining the height of the building in stories, and a sprinkler system is required. The dispute is over the interpretation to be given to the definition of "Grade," supra. Plaintiff contends that "average elevation of the ground adjoining the building or structure *on all sides*" means not only the east, south and west exterior sides, but also includes the walls of the entrance to the inner court and the sides (walls) of the inner court.

The trial judge heard the evidence and viewed the building and premises. The trial court found that if the grade around the exterior of the building, together with the grade adjoining the walls of the inner court, were to be considered in determining the average grade surrounding the entire building, then the average grade above the floor of the lowest level would be 70.6%, and the lowest floor level would be a basement under the definition of the City Ordinances. The court further found that if the grade of the inner court was not used in computing the average grade adjoining the exterior walls (sides) of the building, then the average grade would be less than 50% and the lowest level would not be a basement, but would be the first floor of a three story structure. Neither party finds fault with these factual findings. The court further found that the walls and grade of the inner court should not be used in computing the average grade surrounding the walls (sides) of the building, and that the lowest level was not a basement, but was the first floor of a three story structure, and plaintiff should install an automatic fire sprinkler system.

■ The court found that the Building Code Ordinances must be interpreted according to the customary and ordinary meaning of the terms and phrases therein. In this connection we point out that the trial judge heard the evidence and viewed the premises. The entrance to the inner court has above it a ceiling and the floor of an open area in the top story, and above that a ceiling, and then the roof. Under all of the circumstances we can only conclude that in the definition of "Grade" the phrase "ground adjoining the building or structure on all sides" has reference to the exterior walls of a building as the same are commonly regarded when viewing a structure. We believe it is describing the border or line where the exterior sides meet the surface adjoining them. To accept the contention of the plaintiff would mean that the building had both exterior sides and interior sides and would lead to acceptance of a complicated and unreasonable formula to determine the status of a story as a basement. It could result in an exception to the ordinance, or in defeating the purpose of the ordinance.

■ In Greenlease-Ledterman, Inc. v. Hawkins, 199 Okl. 331, 186 P.2d 318, it is stated:

"Where the language of a statute or ordinance is plain and unambiguous and its meaning clear and no occasion exists for the application of rules of construction, the statute will be accorded the meaning as expressed by the language therein employed."

■ Rules for construction of statutes apply also to ordinances.

In City of Bristow ex rel. Hedges v. Groom, 194 Okl. 384, 151 P.2d 936, 940, we held:

"The cardinal rule of statutory construction, to which all other rules are subordinate, is to ascertain the intention of the Legislature (25 R.C.L. 960), and this should ordinarily be done by a consideration of the language of the statute, and the courts should not read into a statute exceptions not made by the Legislature, 59 C.J. 974; 25 R.C.L. 961, 963. It has been well said that 'seeking hidden meaning at variance with the language used is a perilous undertaking which is quite as apt to lead to

an amendment of a law by judicial construction as it is to arrive at the actual thought in the legislative mind.' 25 R.C.L. 963."

■ We conclude that the trial court correctly construed the ordinances in question, and that the application of said ordinances to the situation presented and the finding and judgment that the lower level in question was not a basement was likewise correct.

■ The plaintiff makes some argument that the portion of the judgment ordering the plaintiff to install the sprinkler system within 90 days from the effective date of the judgment rendered January 29, 1964, is invalid for the reason that it is outside of the issues.

Plaintiff argues that it has since completed the apartment house and that the threat of the city and its agent to enforce the ordinance by stopping construction until the installation was made is no longer a deterrent and is a moot matter. We note that the trial court continued in effect the temporary restraining order against the city, pending final decision in this court, at the request of plaintiff. This is tantamount to saying that, having failed in the lower court and even though failing to reverse the judgment in this court, the plaintiff may avoid compliance with the ordinance.

■ We note that 12 O.S.1961, § 1655, of the Declaratory Judgment Act makes provision for granting further relief based upon a determination of rights, status, or other legal relations. In this connection we point out that the plaintiff presented to the trial court the proposition of the construction to be given certain provisions of the City Building Code and the effect and application thereof to a situation consisting of an apartment house in process of construction. The trial was speedily held and a judgment was rendered adverse to plaintiff at a time when the sprinkler system could have been installed without disturbing prior construction. It is apparent that the trial court, after determining that such installation was required by the ordinances, must have believed that effect should be given to the ordinances by ordering plaintiff to make the installation while the construction was being carried on. It appears to us that this was a fair and equitable order in behalf of the City and was appropriate under the circumstances. There is nothing in the record that would indicate that the circumstances would change in any way so as to eliminate the requirement and necessity for installing the sprinkler system. All parties affected by the judgment were parties to the action.

In 26 C.J.S. Declaratory Judgments § 160, it is stated:

"Generally, in an action for a declaratory judgment, the court may grant such relief as equity dictates, and as is warranted by the proof. The fact that declaratory relief is sought does not preclude other relief appropriate to what purports to be an action in equity, and the court has wide discretion in determining what relief is proper and in prescribing the time within which such relief should become effective."

We find no error in the court making the complained of order.

For the reasons and upon the authority herein set forth the judgment of the lower court is affirmed.

HALLEY, C. J., JACKSON, V. C. J., and WILLIAMS, IRWIN and BERRY, JJ., concur.