[No. A130374. First Dist., Div. Four. June 4, 2012.]

HEALDSBURG CITIZENS FOR SUSTAINABLE SOLUTIONS et al., Petitioners, Respondents, and Cross-appellants, v.
CITY OF HEALDSBURG et al., Defendants, Appellants, and Cross-respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.B. and C.

## COUNSEL

Perry, Johnson, Anderson, Miller & Moskowitz, Leslie R. Perry, Daphne A. Beletsis; Meyers, Nave, Riback, Silver & Wilson, Michael Gogna and Edward Grutzmacher for Defendants, Appellants and Cross-respondents.

Provencher & Flatt, Rachel Mansfield-Howlett and Janis H. Grattan for Petitioners, Respondents and Cross-appellants.

## OPINION

**RIVERA, J.**—The trial court awarded attorney fees to petitioners Healdsburg Citizens for Sustainable Solutions (HCSS), Janis Grattan,[1] and Millie Bisset (collectively, petitioners) after the court granted in part HCSS's petition for writ of mandate challenging an environmental impact report (EIR) under the California Environmental Quality Act, Public Resources Code section 21000 et seq. (CEQA). In their appeal from the order awarding attorney fees, defendant City of Healdsburg (the City) and real party in interest Sonoma Luxury Resort LLC (SLR) (collectively, defendants) raise a number of challenges to the award. In the published portion of this opinion, we reject defendants' contention that the trial court erred in awarding attorney fees for the legal services provided by Grattan. In the unpublished portion, we reject the remainder of defendants' challenges to the fee order, as well as petitioners' contention in their cross-appeal that the trial court should have used a multiplier to increase the award for Grattan's services. Finding no abuse of the trial court's discretion, we shall affirm the order awarding attorney fees.

---

[1] Grattan is named in the petition for writ of mandate as Janis G. Watkins. The parties do not dispute that Janis Grattan and Janis G. Watkins are one and the same person. For the sake of consistency, we will refer to her throughout as "Grattan."

# I.  BACKGROUND

Petitioners' first amended petition for writ of mandamus (the petition) challenged the certification of an EIR and project approvals for the Saggio Hills Resort development (the Project). SLR is the owner of the Project site and the applicant for the Project approvals, and the City owns a portion of the property proposed for wetlands mitigation. The Project includes a resort, resort residences, a community park and trail system, a fire substation, and the dedication of land for future affordable housing. The petition alleged the City violated CEQA by approving the Project without adopting feasible alternatives and mitigation measures to reduce the Project's significant environmental impacts; that the EIR was inadequate and incomplete and neither its conclusions nor the City's findings certifying it, rejecting alternatives, and adopting a statement of overriding considerations were supported by substantial evidence; and the EIR did not respond adequately to comments or review a reasonable range of feasible alternatives.

The trial court granted the petition in several respects, finding the EIR defective in failing to study the water demand associated with vegetation to be planted as part of the mitigation measures, failing to consider the Project's aesthetic effects on local vista points and trails, and failing to consider a sufficient range of viable, feasible alternatives. The court rejected HCSS's challenges to the EIR's analysis of greenhouse gas emissions, water supply and demand, mitigation of aesthetic impacts, impacts on oak habitat, and traffic mitigation, and to the statement of overriding considerations.

HCSS moved for attorney fees under Code of Civil Procedure section 1021.5.[2] The trial court granted the motion, ruling HCSS was entitled to attorney fees under section 1021.5 because the action had enforced an important right affecting the public, it had conferred benefits on a large group, and the necessity of the action and the financial burden made the award appropriate. The court concluded that for the purpose of determining fees, HCSS had been approximately 60 percent successful, and accordingly reduced most of the claimed fees by 40 percent. The court then applied a multiplier of 1.5 to the time claimed by one of HCSS's attorneys, Rachel Mansfield-Howlett, while declining to award the multiplier for the legal services provided by Grattan due to her involvement with HCSS and personal interest in the action, or to Susan Brandt-Hawley, an attorney who had consulted with petitioners' counsel but did not take the case on a contingent basis and had only limited involvement in the case. The total fee award was $382,189.73.

---

[2] All undesignated statutory references are to the Code of Civil Procedure.

## II.  DISCUSSION

### A.  Award of Fees to Pro. Per. Litigant

#### 1.  *Background*

■  "Section 1021.5 codifies the private attorney general doctrine the Supreme Court adopted in *Serrano v. Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303]. [Citation.] ' " 'The doctrine rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible. [Citations.]' [Citation.] Entitlement to fees under section 1021.5 requires a showing that the litigation: '(1) served to vindicate an important public right; (2) conferred a significant benefit on the general public or a large class of persons; and (3) [was necessary and] imposed a financial burden on plaintiffs which was out of proportion to their individual stake in the matter.' [Citation.]" [Citation.] In short, section 1021.5 acts as an incentive for the pursuit of public interest-related litigation that might otherwise have been too costly to bring.' [Citation.] [¶] ■  'It is well settled that the private attorney general theory applies to an action to enforce provisions of CEQA.' [Citations.]" (*Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 611–612 [115 Cal.Rptr.3d 762], fn. omitted.)[3]

Defendants contend the trial court erred in awarding fees to one of the attorneys, Grattan, because she was a party to this action. Petitioners are HCSS, Grattan, and Millie Bisset. Grattan signed the verification included in the petition on behalf of HCSS, of which she was a member.

In her declaration in support of the motion for attorney fees, Grattan averred that the litigation was "exceptionally fact-intensive and legally-complex," and she had agreed to work on a contingent fee basis with Rachel Mansfield-Howlett, who was the lead attorney, in order to "help 'level the playing field' " with defendants, who were represented by "several very able and experienced attorneys."

---

[3] Section 1021.5 provides in pertinent part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

The trial court found the action "successfully enforced important public rights, benefiting the public as a whole, and that the burdens and benefits of the lawsuit 'transcend' or outweigh Petitioners' personal interest, particularly their financial interest. Petitioners brought this action in order to require Respondent and Real Parties to fully comply with the requirements for an EIR, fully analyze and consider issues insufficiently addressed in the original EIR, and thus further the generally applicable CEQA policies of promoting transparent good government, full public disclosure, full public participation, and consideration for the environment." In denying a multiplier for Grattan's fees, the court noted that she "spent considerable time and effort, as a hired attorney, on behalf of Petitioners," but that she was "personally involved with Petitioners and somewhat personally interested in this action."

### 2. *Analysis*

In the context of contractual attorney fees, our Supreme Court has held that "an attorney who chooses to litigate in propria persona and therefore does not pay or become liable to pay consideration in exchange for legal representation cannot recover 'reasonable attorney's fees' under [Civil Code] section 1717 as compensation for the time and effort he expends on his own behalf or for the professional business opportunities he forgoes as a result of his decision." (*Trope v. Katz* (1995) 11 Cal.4th 274, 292 [45 Cal.Rptr.2d 241, 902 P.2d 259] (*Trope*).) The court based this conclusion in part on the language of Civil Code section 1717, subdivision (a), which provides for mutuality of attorney fees "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are *incurred* to enforce that contract, shall be awarded" to the prevailing party. (Italics added.) By its terms, reasoned the court, the statute applied to contracts providing for attorney fees *incurred* to enforce the contract, and "[t]o 'incur' a fee, of course, is to 'become liable' for it [citation], i.e., to become obligated to *pay* it. It follows that an attorney litigating in propria persona cannot be said to 'incur' compensation for his time and his lost business opportunities." (*Trope, supra,* 11 Cal.4th at p. 280.) The *Trope* court also looked to dictionary definitions of the terms "fee" and "attorney fees," and concluded that "the usual and ordinary meaning of the words 'attorney's fees,' both in legal and in general usage, is the consideration that a litigant actually pays or becomes liable to pay in exchange for legal representation. An attorney litigating in propria persona pays no such compensation." (*Ibid.*) However, attorney fees may properly be awarded even where legal services were provided at no personal expense to the client, such as when legal work is performed pro bono publico or by a public interest law firm. (See *Lolley v. Campbell* (2002) 28 Cal.4th 367, 374–375 [121 Cal.Rptr.2d 571, 48 P.3d 1128]; *Serrano v. Priest, supra,* 20 Cal.3d at pp. 47–48 (*Serrano*).)

The court in *Trope* explained, however, that its decision was *not* based on any of the traditional equitable exceptions to the American rule that each party pay its own attorney fees, such as the private attorney general, substantial benefit, and common fund theories. (*Trope, supra,* 11 Cal.4th at p. 284.) In ruling on cases involving such equitable exceptions, the court's "authority to shape the various theories of recovery . . . derived from our traditionally broader and more flexible 'inherent equitable powers.' " (*Ibid.*)[4] The court specifically declined to express an opinion on the application of its rule in the context of the equitable exceptions to the American rule. (11 Cal.4th at p. 292.)[5]

Here, Grattan is a named party to the case challenging an EIR under CEQA, and a member of the environmental organization that is also a party to the case. She was not lead counsel, but carried out work for lead counsel. The parties have drawn our attention to no cases precisely on point, and our own research has disclosed none. We are guided, however, by other cases considering an award of attorney fees after successful litigation to vindicate an important public right.

In *Families Unafraid to Uphold Rural El Dorado County v. Board of Supervisors* (2000) 79 Cal.App.4th 505 [94 Cal.Rptr.2d 205] (*Families Unafraid*), disapproved on another ground by *Conservatorship of Whitley*

---

[4] In doing so, the court distinguished *Consumers Lobby Against Monopolies v. Public Utilities Com.* (1979) 25 Cal.3d 891 [160 Cal.Rptr. 124, 603 P.2d 41] (*Consumers Lobby*). (*Trope, supra,* 11 Cal.4th at pp. 283–284.) As the court noted, *Consumers Lobby* considered "whether the Public Utilities Commission has discretion under Public Utilities Code section 701 to award attorney fees to a pro se litigant in an administrative proceeding under any of the traditional *equitable* exceptions to the American rule." (*Trope, supra,* 11 Cal.4th at p. 284.) The court in *Consumers Lobby* concluded that certain fees were available under the common fund doctrine, and that they could be awarded to a nonattorney appearing in a representative capacity. (*Consumers Lobby, supra,* 25 Cal.3d at pp. 913–915.) The high court noted the general rule that an attorney representing himself may not recover the value of his services because he has neither paid fees nor incurred the obligation to do so, but concluded that equitable considerations provided "compelling grounds" for awarding such fees under the common fund theory despite that rule, since the nonattorney, though technically appearing on his own behalf, effectively represented the interests of taxpayers who ultimately benefited from the settlement he obtained. (*Id.* at p. 914.) In dictum, the court questioned the rationale of the past decisions that did not allow an attorney in propria persona to recover fees for his own services. (*Id.* at p. 915, fn. 13.)

[5] The equitable private attorney fee doctrine applies "when a litigant has successfully vindicated a right of *constitutional* dimension and has provided benefits to a large group of persons under circumstances in which subsidization of attorney fees is necessary if enforcement of the right is to be achieved." (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 930 [154 Cal.Rptr. 503, 593 P.2d 200], italics added (*Woodland Hills*), citing *Serrano, supra,* 20 Cal.3d at p. 47.) Section 1021.5, on the other hand, "provides explicit statutory authorization for a 'private attorney general' attorney fee award without regard to whether the public policy vindicated rests upon Constitution or statute." (*Woodland Hills, supra,* 23 Cal.3d at pp. 930–931.)

(2010) 50 Cal.4th 1206, 1226, footnote 4 [117 Cal.Rptr.3d 342, 241 P.3d 840], the court considered a related issue. A plaintiff organization and others brought a successful CEQA action challenging the approval of a residential subdivision, and were awarded attorney fees under section 1021.5. (*Families Unafraid, supra,* 79 Cal.App.4th at pp. 509–511.) One of the plaintiffs' attorneys, referred to as Attorney Barrow, was also a member of the organization, and lived on a road that would be affected by the project. (*Id.* at pp. 518–519.) The appellate court rejected the respondents' argument that Barrow should not receive attorney fees because he was a beneficiary of the litigation. In doing so, it rejected the respondents' argument that fees were improper under *Bruno v. Bell* (1979) 91 Cal.App.3d 776 [154 Cal.Rptr. 435] (*Bruno*) (relied on by petitioners here) on the ground that in *Bruno*, "the only plaintiff was an attorney pursuing a legal technicality of de minimis societal importance." (*Families Unafraid, supra,* 79 Cal.App.4th at pp. 521–522, citing *Bruno, supra,* 91 Cal.App.3d at p. 786.) In response to the argument that Barrow should not profit from litigation in which he was the largest beneficiary, the *Families Unafraid* court reasoned: "Section 1021.5's requirements that an important public right be enforced and a significant public benefit be conferred act as legal safeguards in this respect." (*Families Unafraid, supra,* 79 Cal.App.4th at p. 522.) Furthermore, the court noted, there were factual safeguards, viz., there was a large number of member plaintiffs; Barrow was not "self-dealing"—he took on the case only after other counsel were unavailable; and Barrow had spent significant time on the matter, although he did not normally work on a contingency basis. (*Id.* at p. 522.)

*Families Unafraid* relied in part on *Kern River Public Access Com. v. City of Bakersfield* (1985) 170 Cal.App.3d 1205, 1212, 1225–1226 [217 Cal.Rptr. 125] (*Kern River*), in which the appellate court concluded attorney fees were properly awarded under section 1021.5 to an attorney who represented a nonprofit corporation he had helped to organize. (*Families Unafraid, supra,* 79 Cal.App.4th at pp. 521–522.) The court in *Kern River* concluded that the award advanced the purpose of section 1021.5 " 'to encourage suits effectuating a strong [public] policy' "—in that case to provide access to the rivers of California—and that "[w]hen a local agency . . . fails to enforce this law, private suits like this one are the only practical way to effectuate the policy, so attorney's fee awards are appropriate." (*Kern River, supra,* 170 Cal.App.3d at p. 1226.)

Thus, *Families Unafraid* and *Kern River* teach that an attorney who is a member of an organization may recover attorney fees under section 1021.5 if the attorney meets the requirements of the private attorney general doctrine. Defendants argue, however, that these cases are inapposite because here, not only was Grattan a member of HCSS, but she was also a named party whose interests were the same as those of the organization. They rely upon *Gorman v.*

*Tassajara Development Corp.* (2009) 178 Cal.App.4th 44 [100 Cal.Rptr.3d 152] (*Gorman*), in which a husband's law firm represented both the husband and his wife in an action against a contractor and others alleging defective construction of a residence; the husband and wife were later awarded contractual attorney fees. (*Id.* at pp. 52–53, 93.) On appeal, the contractor contended the husband and wife were not entitled to recover legal fees for legal work by the husband's law firm. (*Id.* at p. 93.) The appellate court concluded that under *Trope*, to the extent the fees were attributable to the work of the husband, the husband and wife were not entitled to them. (*Id.* at pp. 93–97.) In response to the contention that there was an attorney-client relationship between the firm and the wife, the court said, "We can certainly imagine cases in which a true attorney-client relationship exists between spouses. However, in this case, husband and wife sued for and obtained recovery for the defective construction of their residence. There is no indication that [the wife] suffered any damages apart from those suffered by her husband. Their interests in this matter appear to be joint and indivisible. There is no claim that [the husband] spent extra time in this case representing his wife in addition to the time he spent representing himself. . . . Since [the husband's] billable hours appear to be entirely attributable to representing his common interests with [the wife], we conclude that the rule of *Trope* applies to this situation." (*Gorman, supra,* 178 Cal.App.4th at p. 95.)

A different result was reached in *Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510 [37 Cal.Rptr.3d 381] (*Ramona*), in which an attorney who was also a party to an action performed legal work to assist in the legal defense of both her codefendants and herself. After an organization, of which the attorney was a member, unsuccessfully challenged a school construction project under CEQA, the school district brought an action for abuse of process and barratry against the organization, its principals, and its attorney in the underlying CEQA action, Julie Hamilton. (*Ramona, supra,* 135 Cal.App.4th at pp. 514, 517.) The defendants moved successfully to strike the complaint under the anti-SLAPP statute (strategic lawsuit against public participation, § 425.16), and the trial court awarded them attorney fees. (*Ramona, supra,* 135 Cal.App.4th at p. 514.) On appeal, the school district challenged the award to Hamilton because under *Trope*, a self-represented attorney is not entitled to an award of attorney fees. (*Ramona, supra,* 135 Cal.App.4th at p. 523.) In rejecting this challenge, the court noted that all defendants had retained special counsel James Moneer to pursue the anti-SLAPP motion, and "Hamilton continued to represent [the organization and its principals] by assisting Moneer's pursuit of that motion . . . to aid in the legal defense of [the organization and its principals] (as well as herself) against [the district's] complaint." (*Ramona, supra,* 135 Cal.App.4th at pp. 523–524.) The court concluded that because an attorney-client relationship existed between Hamilton and the other defendants, ". . . *Trope* does not

preclude the award of attorney fees merely because Hamilton was a co-defendant with the nonattorney clients to whom she provided legal assistance." (*Ramona, supra*, 135 Cal.App.4th at p. 525.)

It thus appears that in *Ramona* the attorney's work inured to the benefit of the attorney and also, *independently*, to her codefendants, with whom she had an attorney-client relationship. In *Gorman*, the husband/plaintiff/attorney's interests in the outcome of the action were identical to and interchangeable with the interests of the wife/coplaintiff. Accordingly, there could be no true attorney-client relationship by which the husband represented some interest of the wife's, distinct from his own. In the case before us, the record supports the conclusion that a genuine attorney-client relationship existed between Grattan and her copetitioners, as the court implicitly found when it concluded she was a "hired attorney." Even though Grattan may have enjoyed the benefits conferred by the litigation in common with her copetitioners and the public, she is not in the kind of legal relationship with her copetitioners that would make her own interests interchangeable with, or legally indistinct from, theirs.

■ Another distinction from *Gorman* lies in the fact that here, we are not considering contractual attorney fees incurred in an action to enforce a private right, but, rather, fees incurred in an action to enforce an important right affecting the public, which conferred benefits on a large group. Our Supreme Court has noted that "[s]ection 1021.5 codifies the courts' 'traditional equitable discretion' concerning attorney fees [citation], and within the statutory parameters courts retain considerable discretion." (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 251 [85 Cal.Rptr.3d 466, 195 P.3d 1049]; see *Woodland Hills, supra*, 23 Cal.3d at p. 938 [court's traditional equitable discretion codified in § 1021.5].) In the circumstances of this case, we believe the trial court could properly award attorney fees for Grattan's services.

■ Defendants contend Grattan did not have an attorney-client relationship with HCSS and Bisset. However, both Grattan and petitioners' lead counsel, Rachel Mansfield-Howlett, were of counsel at the law firm of Provencher & Flatt LLP, and Grattan, who was experienced in CEQA litigation, agreed to work with Mansfield-Howlett on a contingent fee basis.[6] The trial court could reasonably conclude each had an attorney-client relationship with HCSS and Bisset. Moreover, it appears that HCSS has over 100

---

[6] Grattan averred in her declaration that she agreed to work with Mansfield-Howlett on a contingent fee basis. Mansfield-Howlett corroborated this statement during oral argument, when she told the trial court, "[Grattan] did take it on a contingency basis. That was our agreement. I hired [Grattan], and that also takes it out of the in pro per situation."

members,[7] and there is no cause for concern that Grattan is self-dealing. Rather, she was seeking to vindicate an important public interest in ensuring compliance with CEQA, and at the same time taking the risk that she would not be compensated for her time. (See *Families Unafraid, supra,* 79 Cal.App.4th at p. 522; see also *Trope, supra,* 11 Cal.4th at p. 290.) The trial court therefore did not err in awarding fees for her work under the private attorney general doctrine codified in section 1021.5.

**B., C.**\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III.  DISPOSITION

The order appealed from is affirmed.

Ruvolo, P. J., and Sepulveda, J.,[†] concurred.

---

[7] Mansfield-Howlett declared that she had personal knowledge of the "contributors and supporters of HCSS," that its "[s]upporters" numbered just over 100 individuals, and that to her knowledge, none of the members lived close enough to the Project to have a private pecuniary interest in the litigation.

\*See footnote, *ante,* page 988.

[†] Retired Associate Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.