OSCN Found Document:ANTINI v. ANTINI

 

 
 

 
 ANTINI v. ANTINI
2019 OK 20
Case Number: 115002
Decided: 04/09/2019
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2019 OK 20, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

In Re the Marriage of:
Matthew L. Antini, Appellee,
v.
Angela M. Antini, Appellant.
ON CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION I
Â¶0 In this writ of habeas corpus action brought under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), Okla. Stat. tit. 43, Â§Â§ 551-101 through 402 (2011), prevailing party appeals trial court's order denying prevailing party's motion for attorney fees and costs. The court held that attorney fees can only be awarded to a party who has retained and paid for legal counsel and declined to address prevailing party's request for transcription costs. The Court of Civil Appeals affirmed the trial court's holding regarding attorney fees but reversed the holding regarding transcription costs. We find that the intent of the Legislature in enacting the UCCJEA was not to except entities rendering legal services at no cost to the clients. Accordingly, Appellant is entitled to reasonable and necessary expenses including attorney fees borne by her counsel, Legal Aid Services of Oklahoma. 
CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS OPINION VACATED;
TRIAL COURT ORDER REVERSED AND REMANDED
WITH INSTRUCTIONS.
Kade A. McClure, Richard J. Goralewicz, Legal Aid Services of Oklahoma, Inc., Oklahoma City, for Appellant.
Joe K. White, Duncan, OK, for Appellee.
Colbert, J. 
Â¶1 At issue is whether Okla. Stat. tit. 43, Â§ 551-312 of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") requires a court to award prevailing party attorney fees to entities rendering legal services to clients at no cost. We answer in the affirmative.
I. FACTUAL AND PROCEDURAL HISTORY
Â¶2 Appellant, Angela M. Antini, and Appellee, Matthew L. Antini, are the biological parents of two minor children. In November 2013, the parties were granted a Judgment of Divorce in the State of New York. In it, the court awarded Appellant physical custody over the children with the parties sharing joint legal custody. Appellee was granted visitation rights and ordered to pay child support.
Â¶3 In 2013, prior to the entry of the Judgment of Divorce, Appellant moved with the children from New York to Maine. In April 2014, Appellee picked the children up in Maine for visitation but transported them to Oklahoma and, despite Appellant's requests and her subsequent trip to Oklahoma to recover the children, Appellee refused to return them. On May 19, 2014, after it became apparent that Appellee was not going to return the children, Appellant registered the New York divorce decree as a foreign judgment in a Maine court and filed a motion for contempt against Appellee on May 21, 2014. The court ordered Appellee to appear with the children. However, Appellee did not do so and the Maine court found Appellee in contempt on September 24, 2014. Appellee ignored an offer to purge his contempt by returning both children by September 26, 2014, and Appellee never returned the children to Maine. Because of this failure to return the children, the Maine court issued a bench warrant for Appellee.
Â¶4 On December 16, 2014, Appellee filed a petition in the District Court of Stephens County, State of Oklahoma, to register the New York divorce decree in Oklahoma and asked the court to assume custody jurisdiction. Appellee's petition did not reference the registration of the New York Decree in Maine nor the contempt proceedings in Maine. In response, Appellant filed a special appearance in the trial court objecting to the registration of the New York final judgment of divorce and also filed a petition and application for a writ of habeas corpus requesting custody of the minor children. On March 17, 2015, the court found that "pursuant to the Oklahoma Uniform Child Custody Jurisdiction and Enforcement Act, 43 O.S. Â§Â§ 551-201 et. seq. the [S]tate of Oklahoma has no jurisdiction in this matter and that this action should be dismissed." Maine retained child custody jurisdiction and ordered the return of the children to Appellant. The Oklahoma court also denied and dismissed the petition to register the New York decree in Oklahoma.
Â¶5 On April 21, 2015, Appellant filed a pro se motion to modify custody in the Maine court, requesting sole custody of the children and granting Appellee supervised visitation. Appellee responded with an answer and counterclaim on May 7, 2015, but then failed to appear before the Maine court. The Maine court then granted Appellant's motion and ruled it had exclusive and continuing jurisdiction over the children. No appeal of the Maine court's decision was entered and the decision is now final under Maine law.
Â¶6 On April 29, 2015, Appellee filed in the Oklahoma court a Motion to Reconsider the March 17, 2015, decision, denying and dismissing Appellee's motion to register the New York judgment in Oklahoma and granting custody of the minor children to Appellant. That motion was heard on April 14, 2016, and the court issued its decision denying the motion and dismissing the petition.
Â¶7 Subsequently, Appellant filed a Motion for Costs and Attorney's Fees pursuant to Okla. Stat. tit. 43, Â§ 551-312, a fee-shifting statute within the UCCJEA. That section mandates that a court award to the prevailing party
necessary and reasonable expenses incurred by or on behalf of the party, including costs, communication expenses, attorney's fees, investigative fees, expenses for witnesses, travel expenses, and child care during the course of the proceedings, unless the party from whom fees or expenses are sought establishes that the award would be clearly inappropriate. 
In the motion, counsel sought payment of prevailing party attorney fees and reimbursement of costs for transcripts. The court denied her motion, finding, as a matter of law, that attorney fees can only be awarded under the UCCJEA to a party who has retained counsel and personally paid for their services. That is, Appellant's counsel was not entitled to a reasonable attorney fee merely because Appellant was represented by Legal Aid Services of Oklahoma, Inc. The court further denied Appellant's request for transcription costs reasoning that the issue of costs for transcription of a default modification of divorce decree hearing in Maine should be decided in Maine.
Â¶8 Appellant appealed. On appeal, the Court of Civil Appeals affirmed the district court as to the claim for attorney's fees but reversed and remanded on the issue of transcription costs. In so doing, the court held that "[w]ithout . . . guidance, either from the Legislature or the Oklahoma Supreme Court, Okla. Stat. tit. 43, Â§ 551-312 (2011) does not statutorily mandate attorney fee awards to prevailing parties when the prevailing party receives free legal services." But, the court further held that because the transcription of the hearing in Maine was vital to the Oklahoma trial court's determination that it lacked jurisdiction, Appellant should be awarded the transcription cost pursuant to Â§ 551-312. Appellant sought certiorari review.
II. STANDARD OF REVIEW
Â¶9 The issue presented in this case is one of statutory interpretation. Statutory interpretation presents a question of law which this Court reviews under a de novo standard. Corbeil v. Emricks Van & Storage, 2017 OK 71, Â¶ 10, 404 P.3d 856, 858; Brown v. Claims Mgmt. Res. Inc., 2017 OK 13, Â¶ 10, 391 P.3d 111, 115. In conducting de novo review, this Court possesses plenary, independent, and non-deferential authority to examine the lower tribunal's legal rulings. Corbeil, 2017 OK 71, Â¶ 10, 404 P.3d at 858.
Â¶10 At issue is whether Okla. Stat. tit. 43, Â§ 551-312 (2011) excepts a class of attorneys from recovering prevailing party attorney fees for services rendered at no cost to their client. To answer this question, this Court must interpret and give ordinary meaning to the plain language of a statute while balancing the Legislature's intent. Statutory interpretation and ascertaining Legislative intent present questions of law which this Court reviews de novo. See Samman v. Multiple Injury Trust Fund, 2001 OK 71, Â¶ 8, 33 P.3d 302, 305; see also Baptist Med. Ctr. v. Pruett, 1999 OK CIV APP 39, Â¶ 11, 978 P.2d 1005, 1008 ("Matters involving legislative intent present questions of law which are examined independently and without deference to the trial court's ruling."). 
III. DISCUSSION
A. The plain language of Okla. Stat. tit. 43, Â§ 551-312 (2011) requires the trial
court to award to a prevailing party a reasonable attorney fee, without regard to
whether or not the cost of the representation was passed onto the client.
Â¶11 Oklahoma follows the "American Rule" which states generally that the cost of litigation is borne distinctly by each litigant and that the court is without authority to assess attorney fee awards without statutory authority to do so. Fulsom v. Fulsom, 2003 OK 96, Â¶ 8, 81 P.3d 652, 655 (citations omitted). Fee-shifting statutes are strictly construed because of the "chilling" effect the statutes have on access to courts. Id. Thus, proper application of Â§ 551-312 requires that we ascertain the Legislature's intent when the UCCJEA was enacted. State v. Tate, 2012 OK 31, Â¶ 7, 276 P.3d 1017, 1020.
Â¶12 Legislative intent is presumed to be expressed in the statute's text, and, where the language of the statute is plain and unambiguous, the court will not supplant its own interpretation in its place. Arrow Tool & Gauge v. Mead, 2000 OK 86, Â¶ 15, 16 P.3d 1120, 1125. "The [w]ords and phrases of a statute are to be understood and used not in an abstract sense, but with due regard for context, and they must harmonize with other sections of the Act." Tate, 2012 OK 31, Â¶ 7, 276 P.3d at 1020. Section 551-312 is a fee-shifting statute and must be interpreted according to its own terms. State ex rel. Dep't of Transp. v. Norman Indus. Dev. Corp., 2001 OK 72, Â¶ 17, 41 P.3d 960, 965--66. Moreover, "courts should not read into a statute exceptions not made by the Legislature." Seventeen Hundred Peoria, Inc. v. City of Tulsa, 1966 OK 155, Â¶ 14, 422 P.2d 840, 843 (citation omitted). When a legislature intends for an exception to exist within a statute, it is free to do so, and when the language used is broad and comprehensive and no exception is made, it is conclusive evidence that no exception is intended. City of Chickasha v. O'Brien, 1915 OK 813, Â¶ 15, 159 P. 282, 284.
Â¶13 The UCCJEA has been adopted by 49 states, including Oklahoma, to prevent forum shopping schemes and to combat interstate custody disputes. Summarily, the purposes of the UCCJEA are to: (1) avoid jurisdictional competition in child custody cases; (2) promote cooperation with the courts of other states; (3) discourage the use of the interstate system for the same; (4) deter abductions of children; (5) avoid relitigation of custody decisions of other states in this State; and (6) facilitate the enforcement of custody decrees of other states. Okla. Stat. tit. 43, Â§ 551-101, Official Comment (2011); see also, Uniform Child Custody Jurisdiction Act (1968) Â§ 1. Article Three of Oklahoma's UCCJEA ("Enforcement") includes Â§ 551-312, which provides in its entirety:
A. The court shall award the prevailing party, including a state, necessary and reasonable expenses incurred by or on behalf of the party, including costs, communication expenses, attorney's fees, investigative fees, expenses for witnesses, travel expenses, and child care during the course of the proceedings, unless the party from whom fees or expenses are sought establishes that the award would be clearly inappropriate.
B. The court may not assess fees, costs, or expenses against a state unless authorized by laws other than this act.
(emphasis added).
Â¶14 The word "shall" expresses a command or a mandatory directive creating an unequivocal right that leaves no discretion with the court to deny it. Sooner Builders & Invs., Inc. v. Nolan Hatcher Constr. Servs., L.L.C., 2007 OK 50, Â¶ 17, 164 P.3d 1063, 1069 (citing Macy v. Freeman, 1991 OK 59, Â¶ 8, 814 P.2d 147, 153; Forest Oil v. Okla. Corp. Comm'n, 1990 OK 58, Â¶ 27, 807 P.2d 774, 787). The party that receives "the greatest affirmative judgment" is the prevailing party. Am. Superior Feeds, Inc. v. Mason Warehouse, Inc., 1997 OK CIV APP 43, Â¶ 4, 943 P.2d 171, 173-74. The plain meaning of "prevailing party" refers to the stronger or more victorious party. Sooner Builders & Invs., Inc., 2007 OK 50, Â¶ 17, 164 P.3d at 1069 (citing Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603 (2001)). Similarly, as a legal term of art, "prevailing party" means the successful party who has been awarded relief on the merits of his or her claim. Id. "The language 'reasonable attorney's fees, costs, charges and expenses' places the amount of money which the prevailing party has a right to recover within the discretion of the court . . . to decide what are reasonable amounts for attorney fees and expenses expended or incurred by the prevailing party." Id.
Â¶15 Applying this guidance, the term "shall" in Â§ 551-312 does not leave the decision of whether to award fees to the trial court's discretion. It is a mandate which unequivocally recognizes the right of the prevailing party under the UCCJEA to receive reasonable fees and costs incurred during litigation. Here, Appellant was unquestionably the prevailing party because she was granted relief on the merits of her claim by regaining the custody of her children at the habeas corpus/custody hearing and by ultimately obtaining the dismissal of Appellee's petition to register the New York Final Judgment of Divorce in Oklahoma. Though the burden would typically be upon the non-moving party to demonstrate that the fee-shift would be "clearly inappropriate,"
[1] the amount of fees and costs requested by Appellant is not at issue. Rather, it's whether fees must be granted in the first instance. With that understood, the only question left to be determined is the meaning of "on behalf of" within the phrase "necessary and reasonable expenses incurred by or on behalf of the party." Specifically, whether counsel can recoup expenses and necessary and reasonable costs incurred on behalf of their prevailing client.
Â¶16 Although "on behalf of" has not been interpreted by this Court in this context, the Tenth Circuit Court provides guidance in United States v. Frazier, holding that "the phrase 'on behalf of' means: (1) as a representative of; or (2) in the interest or aid of." 53 F.3d 1105, 1112 (10th Cir. 1995). The Black's Law Dictionary's definition of "behalf" resembles the Tenth Circuit's interpretation: "on behalf of means in the name of, on the part of, as the agent or representative of." Behalf, Black's Law Dictionary (10th ed. 2014).
Â¶17 It goes without question that legal representation comes at a cost. Nor can it be questioned that, attorneys who represent but do not pass the cost of representation onto their clients, are the client's representative and act in the client's best interest. Whether this service is paid for by the client, by the public, or not at all has no effect on this inquiry. Consequently, it becomes apparent that "on behalf of" discloses legislative intent that fees must be awarded even where the party did not pay for the legal services. Ruling otherwise would render the phrase "on behalf of" superfluous, something this Court declines to do. Odom v. Penske Truck Leasing Co., 2018 OK 23, Â¶ 36, 415 P.3d 521, 532 (citations omitted).
Â¶18 In enacting the UCCJEA, the Oklahoma Legislature did not distinguish between legal entities or services that pass on their expenses to their clients or those that do no pass on these expenses. We construe the absence of such a carve-out exception is a meaningful omission. O'Brien, 1915 OK 813, Â¶ 15, 159 P. at 284. If the Legislature wanted such an exception to exist they would have explicitly included one. It is not up to this Court to read such an exception into the statute and there is no indication from the Legislature that such an exception was so intended. Because the Oklahoma district court, in this case, did read an exception into the statute, the order of the Oklahoma district court was in error.
B. Today's holding aligns with the jurisprudence of other courts that have interpreted statutes that are similar to Â§ 551-312.
Â¶19 Although this Court has not ruled squarely on this issue, the clear trend among state and federal courts is to award attorney fees even when the prevailing party did not directly pay for the representation. The Nevada Supreme Court in Miller v. Wilfong expressed several rationales for awarding prevailing party attorney fees when that party is represented at no charge. See, Miller v. Wilfong, 121 Nev. 619, 119 P.3d 727. The Miller Court found that in family law disputes, "one partner has often created or contributed to the other partner's limited financial means" and that in those cases, "if fees are not awarded to pro bono counsel, a wealthier litigant would benefit from creating conditions that force the other party to seek legal aid." Id. at 729-30. The Alaska Supreme Court ruled likewise in an action brought under the UCCJEA in Vazquez v. Campbell, 146 P.3d 1 (Alaska 2006). The Vazquez Court rejected the notion that fees are only "incurred" if the prevailing party pays their attorney and held that "clients receiving free legal services may recover attorney's fees." Id. at 3. Other courts have ruled similarly in domestic disputes. See, Beeson v. Christian, 594 N.E.2d 441, 443 (Ind. 1992) (holding that public policy would be undermined if a party must be personally obligated to pay fees before the court could order them reimbursed); Henriquez v. Henriquez, 413 Md. 287, 299, 992 A.2d 446, 454 (refusing to insert language into fee-shifting statute that would require parties to pay counsel before being awarded fees); Healdsburg Citizens of Sustainable Solutions v. City of Healdsburg, 206 Cal.App.4th 988, 993, 142 Cal.Rptr.3d 250, 254 (1st Dist. 2012) (awarding attorney fees where legal services were provided at no personal expense to the client).
Â¶20 The Official Comment to Â§ 551-312 states that the section is derived from the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. Â§ 11607(b)(3)
[2]. Several courts have applied Â§ 11607(b)(3) to award attorney's fees in the pro bono posture and, though this Court is not bound by the federal courts' pronouncements on a state law question, Johnson v. Ford Motor Co., 2002 OK 24, Â¶ 26, 45 P.3d 86, 95, their decisions are instructive.
Â¶21 In Cuellar v. Joyce, the Ninth Circuit awarded attorneys' fees to a prevailing party that was represented for free. 603 F.3d 1142 (9th Cir. 2010). There, the defendant abducted his and the plaintiff's child and fled from Panama to America. Id. at 1143. The plaintiff petitioned for the return of her child pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (and its implementing statute, ICARA). Id. The Ninth Circuit ordered the child returned and the plaintiff petitioned for an award of attorneys' fees. Id. The court granted the petition, holding that "[f]ee awards serve in part to deter frivolous litigation," and to deny fees to counsel working for free would "encourage abducting parents to engage in improper . . . tactics . . . when the [opposing party] is represented by pro bono counsel." Id. Other courts have applied Â§ 11607(b)(3) similarly. See, e.g., Salazar v. Maimon, 750 F.3d 514, 520 (5th Cir. 2014); Menoza v. Silva, 987 F. SupP.2d 910, 917 (N.D. Iowa 2014); Wasniewski v. Grzelak-Johannsen, 549 F. SupP.2d 965, 971 (N.D. Ohio 2008); Saldivar v. Rodela, 894 F. SupP.2d 916, 927-28 (W.D. Tex. 2012); Antunez-Fernandes v. Connors-Fernandes, 259 F. SupP.2d 800, 816-17 (N.D. Iowa 2003); Larrategui v. Laborde, No. 2:2013cv01175, 2014 WL 2154477 (E.D. Cal. May 22, 2014); Aguilera v. De Lara, No. 2:2014cv01209, 2014 WL 4204947, at *2 n.1 (D. Ariz. Aug. 25, 2014).
Â¶22 Federal courts ruling on issues outside the realm of child custody issues also align with our decision today. In 1996, the Tenth Circuit in Martinez v. Roscoe awarded attorney's fees to a publicly funded legal aid program "perceiv[ing] no reason to distinguish between attorneys who are paid by a party and attorneys who are paid with public funds." 100 F.3d 121, 124. The court further noted that the purpose of the award of attorney fees (in that case) was to "sanction [the] defendants" and that compelling them to pay plaintiff's fees "serve[s] that purpose," and further cited many cases upholding fees for legal service providers: Rodriguez v. Taylor, 569 F.2d 1231, 1244-46 (3d Cir. 1977); Torres v. Sachs, 538 F.2d 10, 12 (2d Cir. 1976); New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 70 n.9 (1980); and Blum v. Stenson, 465 U.S. 886, 894-95 (1984).
Â¶23 Expanding the Martinez ruling, the Third Circuit in Rodriguez noted that "[a]ssessing fees against defendants in all circumstances [including those in which plaintiffs were represented by publicly funded legal providers] may deter wrongdoing in the first place." Rodriguez, 569 F.2d at 1245; see also Cornella v. Schweiker, 728 F.2d 978, 986--87 (8th Cir.1984) ("If attorneys' fees to pro bono organizations are not allowed in litigation against the federal government, it would more than likely discourage involvement by these organizations in such cases, effectively reducing access to the judiciary for indigent individuals."); Hairston v. R & R Apartments, 510 F.2d 1090, 1092 (7th Cir.1975) (awarding fees to pro bono counsel under 42 U.S.C. Â§ 3612(c), the Fair Housing Act's fee-shifting provisions).
Â¶24 Finally, our holding today is in line with United States Supreme Court jurisprudence. In Blum v. Stenson, the United States Supreme Court laid out the policy as follows:
It is also clear from the legislative history that Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization. The citations to Stanford Daily and Davis make this explicit. In Stanford Daily, the court held that it "must avoid . . . decreasing reasonable fees because the attorneys conducted the litigation more as an act of pro bono publico than as an effort at securing a large monetary return." 64 F.R.D. 680, 681 (1974). 
In Davis, the court held:
In determining the amount of fees to be awarded, it is not legally relevant that plaintiffs' counsel . . . are employed by . . . a privately funded non-profit public interest law firm. It is in the interest of the public that such law firms be awarded reasonable attorneys' fees to be computed in the traditional manner when its counsel perform legal services otherwise entitling them to the award of attorneys' fees. 
465 U.S. 886, 894-95 (1984) (citation omitted). We join those courts today.
C. If Â§ 551-312 were held to exclude attorneys rendering legal services
to clients at no cost, many Oklahomans would lose court access.
Â¶25 Article II of the Oklahoma Constitution states: "The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice." Okla. Const. art. II, Â§ 6. This premise guides our decision today.
Â¶26 A party's right to court access is paramount. We recognized the need for a process to provide legal services to low income Oklahomans. Yet, attainment of such a vital service would not be possible without the work of our publicly funded legal groups who work to represent the indigent.
Â¶27 Litigation, whether privately or publicly funded, is never free. And, nothing saps a legal service provider's resources more than a high volume of litigated cases. But, when faced with this dilemma of balancing a high volume need and a legal provider's limited resources, that provider must pick and choose between numerous clients--all whom have the right to seek relief in the courts of justice. See Okla. Const. art. II, Â§ 6.
Â¶28 The stakes are even higher in an action brought under the UCCJEA. Child custody and the sanctity of Oklahoma families would ultimately be at stake if we held otherwise. Without the fear of fee-shifting, parties would file frivolous lawsuits, and abductors, whereas here, would not be held accountable
[3] if the aggrieved parent could not afford representation and courts woefully denied reasonable attorney fees merely because the provider rendering the service did not pass the litigation cost on to the indigent client.
Â¶29 Finally, the irony of holding otherwise is apparent in the present nature of attorney fee awards. In Hamilton v. Telex Corp., we held that attorneys representing themselves pro se could recover fees as the prevailing party. 1981 OK 22, Â¶ 16, 625 P.2d 106, 109. Given our concepts of justice, it would be an unjust and unfair world in which attorneys serving their own self-interest could recover their fees, while those attorneys achieving meaningful court access for their clients do not.
IV. CONCLUSION
Â¶30 The plain language of Okla. Stat. tit. 43, Â§ 551-312 (2011) mandates the award of a reasonable attorney's fee to the prevailing party and the award of reasonable and necessary costs incurred by or on behalf of the party. The phrase "on behalf of" discloses legislative intent that these awards are not limited to private counsel, but also extends to those providing legal services at no cost to indigent clients. Accordingly, to the award of attorney's fees, the district court's order is reversed and this matter is remanded for a determination and award of a reasonable attorney's fee.
Â¶31 We further hold that the transcription costs borne by Appellant are necessary and reasonable expenses and fall squarely within the purview of Â§ 551-312. The decision on whether a transcript should be taxable in a given case must be made by the court with first-hand knowledge of the proceedings. Here, the transcript was submitted as evidence in the Oklahoma court proceeding and provided a comprehensive basis of Appellant's jurisdictional argument to dismiss the Oklahoma Petition to Register Foreign Judgment. This evidence was not only useful, but critical to the court's determination that it lacked jurisdiction. The district court's ruling to the contrary was in error.
CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS OPINION VACATED;
TRIAL COURT ORDER REVERSED AND REMANDED
WITH INSTRUCTIONS.
CONCUR: Gurich, C.J., Winchester, Edmondson, Colbert, Reif, Combs, Darby, JJ.
CONCUR IN JUDGMENT: Wyrick, V.C.J. and Kauger, J. 

I concur in judgment, and concur in all parts of the opinion, except for Part III.C.
FOOTNOTES
[1] Okla. Stat. tit. 43, Â§ 551-312 (2011) Official Comment; see also, 22 U.S.C. Â§ 9007
[2] 42 U.S.C. Â§ 11607(b)(3) has been re-codified at 22 U.S.C. Â§ 9007(b)(3).
[3] Okla. Stat. tit. 43, Â§ 551-101 (Official Comment) (Stated purpose of the UCCJEA)