Filed 8/6/13  Klinger v. Alderette CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BETSY KLINGER, as successor in interest to Barney Klinger,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CRAIG ALDERETE, as successor in interest to Shirley Alderete, et al.,<br><br>    Defendants and Respondents. | B245403<br><br>(Los Angeles County<br>Super. Ct. No. BC487318) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Ruth Ann Kwan, Judge.  Affirmed.

Hillel Chodos for Plaintiff and Appellant.

Knapp, Petersen & Clarke, André E. Jardini, Maria A. Grover, Hilary M. Goldberg for Defendants and Respondents.

_____

Appellant contends that the trial court improperly held a malicious prosecution action to be a Strategic Lawsuit Against Public Participation (SLAPP). (Code Civ. Proc., § 425.16.)[1] We determine that the action arose from protected activity and that appellant failed to establish a reasonable probability of prevailing on the merits. We further find that the trial court did not abuse its discretion in awarding respondents attorney fees and costs.

## BACKGROUND

**The Underlying Lawsuit**

On April 6, 2012, Shirley Alderete filed a lawsuit against Barney Klinger and approximately 40 other defendants stating claims for asbestos-related injuries (the underlying lawsuit).[2] Alderete alleged that her husband worked on various construction projects at which he was exposed to asbestos. One of these projects was at the Schlitz Brewery in Los Angeles, where Alderete's husband worked for Klinger as a pipefitter for approximately one month in 1971. Alderete claimed that she became exposed to asbestos through contact with her husband, particularly when she would shake out and launder his dusty, asbestos-laden work clothes after he returned home from work. Alderete's husband died of mesothelioma in 2004. In her complaint filed in 2012, Alderete stated that she suffered "from a condition related to exposure to asbestos and asbestos-containing products," and she sought damages for injuries suffered because of this condition.

The complaint in the underlying lawsuit was served on Klinger on April 24, 2012. On May 9, 2012, Klinger's attorney, Hillel Chodos, noticed Alderete's deposition and requested documents from her. Alderete, through her attorneys, objected, asserting among other things that the discovery requests violated the trial court's discovery order.

---

[1] All further references to statutes are to the Code of Civil Procedure unless otherwise stated.

[2] While this appeal was pending, both Klinger and Alderete died. Pursuant to orders of this Court, successors in interest have been substituted in their places.

On May 21, 2012, Klinger answered the complaint. The next day, Alderete filed a request for dismissal of Klinger, without prejudice, and the dismissal of Klinger was entered by the clerk. Alderete's attorneys, however, forgot to serve Klinger's attorney with a copy of the request for dismissal, and Klinger's attorney did not learn of the dismissal until June 13, 2012. In the meantime, on behalf of Klinger, he filed a motion to compel the deposition of Alderete and for production of documents.

After Klinger's attorney learned of the dismissal, he sent a letter to Alderete's attorneys asserting that the action was brought without probable cause and with sufficient malice to support a claim for malicious prosecution. He demanded that fees and costs incurred by Klinger in the amount of $7,435 be paid in return for a waiver of any claim for malicious prosecution. Alderete and her attorneys responded by stating that there was good cause for the filing of the action, and they refused to pay the amount demanded.

**The Instant Matter**

On June 27, 2012, two weeks after learning of the dismissal, Klinger sued Alderete as well as her attorneys, Alan Brayton, David Donadio and John Goldstein, and their firm Brayton Purcel, LLP (BP) for malicious prosecution. (Alderete, Brayton, Donadio, Goldstein, and BP are collectively referred to herein as respondents.) Klinger alleged that respondents knew the allegations in the underlying lawsuit against Klinger were false, and that they had no evidence and could not obtain evidence to support their claim. Further, according to Klinger's allegations, respondents' claim was not legally tenable. Klinger alleged that he, through his attorney, sought information supporting respondents' claim, both through formal and informal means, but respondents did not provide any such information. Klinger prayed for damages in excess of $25,000 for costs incurred in defense of the underlying lawsuit and emotional and mental distress.

In August 2012, respondents filed a special (anti-SLAPP) motion to strike Klinger's complaint pursuant to section 425.16. Alderete's attorney Donadio submitted a declaration in connection with the motion. Donadio stated that, in seeking to identify defendants for Alderete's action, BP obtained a deposition transcript containing testimony given by Alderete's husband in a prior lawsuit initiated before he died of

3

mesothelioma in 2004. Attached to Donadio's declaration were copies of that transcript wherein Alderete's husband testified that he worked for a company called "Allied A.C." that was owned by Klinger. Donadio stated that BP investigated Klinger's contractor licenses and found no entity named "Allied A.C.," and that during the time Mr. Alderete worked for him, only Klinger's sole proprietor general contractor license was active.

Explaining the reasons why BP decided to dismiss Klinger from the underlying lawsuit, Donadio declared that shortly before Alderete dismissed Klinger, Donadio learned that Alderete was suffering from lung cancer and not mesothelioma. Donadio also stated that the decision in *Campbell v. Ford Motor Co.* (2012) 206 Cal.App.4th 15 (*Campbell*), issued on May 21, 2012, impacted "asbestos take-home exposure" cases.

The trial court granted respondents' anti-SLAPP motion on October 25, 2012. In its statement of decision, the court noted that Klinger's opposition to the motion was not timely filed or served. The court held that the malicious prosecution complaint arose from protected activity, and that Klinger failed to meet his burden of prevailing on the claim. The court further found that Klinger did not show that respondents commenced or maintained the underlying lawsuit without probable cause, that they initiated the lawsuit with malice, or that the underlying lawsuit terminated in Klinger's favor.

Following the trial court's ruling, respondents moved for attorney fees and costs incurred in connection with the anti-SLAPP motion, seeking a total amount of $30,889. On January 10, 2013, the trial court found that the amount requested was reasonable and granted the motion.

## **DISCUSSION**

Klinger appeals from the order granting the anti-SLAPP motion, arguing that the motion should have been denied. He further asserts that, even if the ruling on the anti-SLAPP motion is upheld, the order awarding respondents fees and costs must be reversed, because the fees requested were excessive and unreasonable.

We review the order granting the anti-SLAPP motion de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.) The order awarding respondents fees and costs is reviewed

for an abuse of discretion. (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1322.)

## I. **The Anti-SLAPP Motion Was Properly Granted**

The anti-SLAPP statute allows the courts to expeditiously dismiss "'a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights.'" (*Simpson Strong-Tie, Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21; *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 670; § 425.16, subd. (a).) There are two components to a motion to strike brought under section 425.16. First, the defendant must show that the challenged cause of action is one arising from protected activity.[3] (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) Second, if the lawsuit affects constitutional rights, the plaintiff must establish a reasonable probability that he or she will prevail on the merits of the claims. (§ 425.16, subd. (b)(1); *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76; *Zamos v. Stroud* (2004) 32 Cal.4th 958, 965.)

Klinger concedes that respondents met their burden on the first prong of the anti-SLAPP analysis. His cause of action for malicious prosecution arises from protected activity—Alderete's filing of the complaint in the underlying lawsuit. (See *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 741; *Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1398 (*Sycamore Ridge*).)

Klinger argues, however, that he sufficiently established a probability of prevailing on his malicious prosecution claim and therefore he satisfied the second step

---

[3] Under the statute, an act in furtherance of the right of petition or free speech includes: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

of the anti-SLAPP analysis. To establish a probability of prevailing, a plaintiff must show that the complaint is legally sufficient and is supported by prima facie evidence sufficient to sustain a favorable judgment if the evidence is credited. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 93; *Jarrow Formulas, Inc. v. LaMarche*, *supra*, 31 Cal.4th at p. 738; *Major v. Silna* (2005) 134 Cal.App.4th 1485, 1498.) To avoid being stricken as a SLAPP, the plaintiff must establish that his or her claim has at least "minimal merit." (*Navellier v. Sletten*, at pp. 88-89.) An anti-SLAPP motion should be granted if the defendant's evidence in support of the motion defeats the plaintiff's attempt to establish evidentiary support for the claim, as a matter of law. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.)

"To prevail on a malicious prosecution claim, the plaintiff must show that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292.) The trial court here found that Klinger failed to provide sufficient evidence to support any one of these three elements.

Because we find that the underlying lawsuit was not brought without probable cause, we need not determine whether the other elements of Klinger's claim were established. Probable cause exists where the plaintiff relies upon facts which he or she has reasonable cause to believe are true, and when the legal theory underlying the cause of action is tenable under the known facts. (*Soukup v. Law Offices of Herbert Hafif*, *supra*, 39 Cal.4th at p. 292.) The determination of whether the institution of the underlying lawsuit was legally tenable is a question of law. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 878.) If "any reasonable attorney" would have considered the claim tenable under the circumstances, then no claim for malicious prosecution will lie. (*Id.* at p. 886; *Sycamore Ridge*, *supra*, 157 Cal.App.4th at p. 1402.) "In determining whether the prior action was legally tenable, i.e., whether the action was supported by probable cause, the court is to construe the allegations of the underlying

6

complaint liberally, in a light most favorable to the malicious prosecution defendant." (*Sycamore Ridge*, at p. 1402.)

Klinger contends that three published opinions rendered the underlying lawsuit legally untenable. The first of these is *O'Neil v. Crane Co.* (2012) 53 Cal.4th 335, 342, in which our Supreme Court held, in the context of asbestos litigation, that a product manufacturer is not strictly liable or liable for negligence "for harm caused by another manufacturer's product unless the defendant's own product contributed substantially to the harm, or the defendant participated substantially in creating a harmful combined use of the products." Klinger was not alleged to be a product manufacturer, but rather a general contractor who employed Mr. Alderete as a pipefitter. *O'Neil* appears to have very little, if any, application to a general contractor employer.

The second and third cases relied on by Klinger, *Campbell*, *supra*, 206 Cal.App.4th 15, and *Casey v. Perini Corp.* (2012) 206 Cal.App.4th 1222, were both decided after Alderete initiated the underlying lawsuit. As acknowledged by Donadio in his declaration, *Campbell* limits the scope of certain defendants' liability in "asbestos take-home exposure" cases such as the underlying lawsuit, in which the plaintiff claimed she was exposed to asbestos by laundering her husband's clothing. (*See Campbell*, at p. 34.) Although the defendant in *Campbell* was a property owner, not a general contractor employer, at least some of the reasoning expressed in *Campbell* for finding no liability would potentially apply to the underlying lawsuit. But that does not change the fact that *Campbell* was decided on May 21, 2012, nearly a month after the underlying lawsuit was filed. And Alderete dismissed her lawsuit against Klinger the day after *Campbell* was decided. The opinion in the third case, *Casey v. Perini Corp.,* was not issued until June 13, 2012, well after Klinger was dismissed, and in any case was decided largely on the basis that the plaintiffs failed to submit sufficient evidence in opposing a motion for summary judgment. Thus, none of the three cases relied on by Klinger rendered the underlying lawsuit legally untenable at the time it was filed, and Alderete did not continue to prosecute the action against Klinger after the one case that potentially affected the legal tenability (*Campbell*) was decided.

7

We further find that Alderete (and her lawyers) had reasonable cause to believe that the allegations against Klinger were true. Evidence supported the conclusion that Alderete's husband contracted mesothelioma through his work as a pipefitter. Her husband's testimony from 2004 supported the conclusion that he worked for Klinger (or his company) for a time as a pipefitter. Donadio's declaration established a reasonable basis to conclude that Alderete worked directly for Klinger, since only Klinger's sole proprietor's license was active during the time period at issue. At the time the underlying lawsuit was filed, Alderete was thought to have mesothelioma. It was reasonable to deduce that Alderete was exposed to asbestos because she laundered her husband's clothing on days that he worked for Klinger, among other employers. Employers have been held liable for asbestos exposure. (*Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 682; *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 962.) Given these facts and the legal authority at the time, we find that Klinger did not establish a probability of prevailing on his malicious prosecution claim.

## II. **We Find No Abuse of Discretion in the Fees Award**

In reviewing an award of attorney fees and costs on an anti-SLAPP motion, we examine whether the trial court abused its discretion, i.e., whether it exceeded the bounds of reason. (*Foundation for Taxpayer & Consumer Rights v. Garamendi* (2005) 132 Cal.App.4th 1375, 1388.) "[A]n experienced trial judge is in a much better position than an appellate court to assess the value of the legal services rendered in his or her court, and the amount of a fee awarded by such a judge will therefore not be set aside on appeal absent a showing that it is manifestly excessive in the circumstances." (*Children's Hospital & Medical Center v. Bontá* (2002) 97 Cal.App.4th 740, 782.)

After receiving briefing and hearing oral argument, the trial court issued a detailed decision awarding attorney fees and costs incurred by respondents. As noted in that decision, respondents' attorneys submitted declarations and time records demonstrating that their work on the anti-SLAPP motion required a significant review of the underlying file. The work expended on the matter and the fees charged do not appear to be manifestly excessive, especially when considering that much of the work was done at a

8

specially discounted rate.  Further, the record supports the trial court's conclusion that fees charged by respondents' initial counsel, Mark Abelson, were recoverable.

We also find that the trial court did not abuse its discretion by awarding fees requested for work done by two of the attorney respondents, Donadio and Goldstein. Donadio's and Goldstein's declarations stated that they performed various tasks in assisting with the anti-SLAPP motion, while they continued to represent Alderete in the underlying lawsuit.  In *Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 524-525, it was held that an attorney who was a defendant could recover attorney fees for work performed that benefited her as well as her codefendants.  Similarly, in *Healdsburg Citizens for Sustainable Solutions v. City of Healdsburg* (2012) 206 Cal.App.4th 988, 997, the court found that, even though a party-attorney herself benefited from work she performed, the work also benefited her copetitioners, and thus an award of fees was proper.  Since the work performed on this matter by Donadio and Goldstein benefited Alderete, the trial court did not err by finding the fees recoverable.

## DISPOSITION

The order granting the anti-SLAPP motion and the related order awarding fees and costs are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.</u>


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


FERNS, J.*

_____

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9