Filed 7/24/15  Ocean View School Dist. v. City of Huntington Beach CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| OCEAN VIEW SCHOOL DISTRICT,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>CITY OF HUNTINGTON BEACH et al.,<br><br>    Defendants and Respondents;<br><br>DECRON PROPERTIES CORPORATION et al.,<br><br>    Real Parties in Interest and Respondents. | G049545<br><br>(Super. Ct. No. 30-2012-00539563)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Steven L. Perk, Judge.  Affirmed in part, reversed in part, and remanded.

Connor, Fletcher & Hedenkamp, Edmond M. Connor and Douglas A. Hedenkamp for Plaintiff and Appellant.

Jennifer McGrath, City Attorney, John M. Fujii, Sr., Deputy City Attorney for Defendants and Respondents.

Jeffer Mangels Butler & Mitchell, Benjamin M. Reznik and Matthew D. Hinks for Real Parties in Interest and Respondents.

*         *         *

In January 2012, Ocean View School District (OVSD) filed a petition for a writ of mandate, seeking decertification of the Final Environmental Impact Report (FEIR) approved by City of Huntington Beach (the City), for the Beach and Warner mixed-use project on property located southwest of the intersection at Beach Boulevard and Warner Avenue in Huntington Beach. The City, its city council and the City's planning commission were also named as respondents in the writ petition. Len Lichter, an owner of one of properties involved, and Decron Properties Corporation (Decron), the other owner and proposed developer, and the City's redevelopment agency were named as real parties in interest. In addition to seeking decertification of the FEIR, the petition also sought attorney fees pursuant to Code of Civil Procedure section 1021.5,[1] the private attorney general statute.

Approximately 16 months later in May 2013, the City decertified the FEIR and withdrew the notice of determination it had filed in connection with the FEIR. Pursuant to the parties' subsequent stipulation deeming the petition moot, the court dismissed the petition and set a briefing schedule for OVSD's motion for attorney fees.

The trial court denied OVSD's motion, finding OVSD was ineligible for an award under section 1021.5 because it failed to show it did not have a pecuniary interest

---

[1] All undesignated statutory references are to the Code of Civil Procedure.

2

in the outcome of the lawsuit.  There was evidence OVSD would incur over $2 million in expenses *if* it had to reopen a closed school to handle the additional new students it would be charged with educating should the project go through.  OVSD appealed, and argues that contrary to the trial court's conclusion, it had no pecuniary interest in litigating this matter.  It reasons that because there was no formal project under consideration when the City approved the FEIR, it was not faced with the possibility of having to pay over $2 million to reopen a closed school as a result of the FEIR.  We agree and reverse.  Because there was no formal proposal under consideration when the City adopted the FEIR, whether OVSD would ever be required to expend funds to reopen a previously closed school site is purely speculative and does not equate to OVSD having a financial interest in the litigation that outweighed the expense of litigation.

I

FACTS

In light of the limited issue before us on appeal, the following facts suffice. The Beach and Edinger Corridors Specific Plan was adopted by the City in March 2010. There were four projects to be analyzed in the Environmental Impact Report (EIR) for the specific plan, but it was decided each of the projects would have its own EIR in order to provide the public and the "decision-makers" adequate time to analyze each project.  The January 2011 draft EIR for the Beach and Warner mixed-use project stated the proposed project is located on the southwest corner of Beach Boulevard and Warner Avenue in Huntington Beach.  The project included retail businesses, restaurants, a three-level parking structure, and 279 residential dwelling units.  The draft EIR noted the proposed project site was contemplated by the EIR for the Beach and Edinger Corridors Specific Plan.

Decron owns a majority of the property within the project site and Lichter's property is "sandwiched" by Decron's.  Initially, Lichter agreed to have his property included in the EIR analysis although he had not made a decision to join in the project.

3

OVSD opposed approval of the EIR. At the October 25, 2011 planning commission meeting, the superintendent of OVSD stated that neither the City nor any developer contacted the school district to determine the impact the project would have on the school district. The superintendent said the project would cause "additional overcrowding at a school site that's already packed to capacity and would impact [OVSD's] busing and support program." He claimed the project "would probably mean" OVSD would be required to reopen a school that has been closed for 20 years.

At the same planning commission meeting, the City represented "there is no project proposed at this time." It was anticipated that upon presentation of a formal application for development, the City would evaluate any such proposed project against the EIR under consideration by the City, as well as the development standards of the Beach and Edinger Corridors Specific Plan.

On December 19, 2011, a representative of OVSD spoke at the City's council meeting and stated that based on the housing proposed in the project, the school district would have to reopen Park View Elementary School (Park View) at a cost of approximately $2.4 million to bring it into compliance with applicable codes if the Beach and Warner mixed-use project goes forward. The City certified the FEIR later that night.

OVSD filed a petition for a writ of mandate in the Orange County Superior Court on January 23, 2012. The petition alleged the City's certification of the FEIR failed to comply with California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.) and CEQA guidelines (Cal. Code Regs., tit 14, § 15000 et seq.).

Within a few months of the filing of the petition, Lichter's attorney informed OVSD's counsel that Lichter wanted nothing to do with the project and wanted out of the litigation. Counsel for OVSD prepared a stipulation and order to dismiss Lichter as a real party in interest.

4

On May 20, 2013, the City decertified the FEIR for the Beach and Warner mixed-use project. On July 15, 2013, a stipulation and a proposed order deeming the petition moot were filed in the action. The parties stipulated the City decertified the FEIR, and that neither Decron nor any other party applied to the City "for any permits, approvals, or other land use entitlements of any kind in connection with" the FEIR. The petition was dismissed a week later.

OVSD subsequently filed its motion for attorney fees under section 1021.5. It sought $127,751.22 in attorney fees for litigating the petition and an additional $8,625 for fees incurred in preparing the motion for attorney fees. Although written in a broad and unclear manner, it appears the motion was for the court to order both the City and Decron to pay OVSD's attorney fees. The motion stated it was based on the stipulation and order deeming the petition for a writ of mandate moot. That stipulation and order set forth the briefing schedule for the anticipated motion for attorney fees. OVSD was to file and serve its motion by August 30, 2103, and the City and Decron were to file and serve either a consolidated opposition or their separate oppositions by October 2, 2013. It also appears Lichter was not a party to the attorney fee motion. There was no briefing from Lichter on OVSD's motion, he was not served with OVSD's notice of appeal, and he has not appeared in this court.

The trial court denied OVSD's request for attorney fees. The court found OVSD failed to show the lack of a pecuniary interest in the litigation, or that the attorney fees incurred by OVSD transcended its financial interest in the litigation. Additional facts are set forth below where relevant.

II

DISCUSSION

A. *Section 1021.5*

Section 1021.5's private attorney general doctrine "rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the

5

fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible. [Citations.]" (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 933.) "[T]he purpose of section 1021.5 is not to compensate with attorney fees only those litigants who have altruistic or lofty motives, but rather all litigants and attorneys who step forward to engage in public interest litigation *when there are insufficient financial incentives to justify the litigation in economic terms*." (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1211, italics added.) Put another way, "'[s]ection 1021.5 was not designed as a method for rewarding litigants motivated by their own pecuniary interests who only coincidentally protect the public interest. [Citations.]' [Citation.]" (*Austin v. Board of Retirement* (1989) 209 Cal.App.3d 1528, 1535.) Rather, section 1021.5 provides "'an incentive for . . . plaintiffs to bring public interest suits when their personal stake in the outcome is insufficient to warrant incurring the cost of litigation.' [Citation.]" (*Conservatorship of Whitely*, *supra*, 50 Cal.4th at p. 1221.)

Litigation involving CEQA may qualify under section 1021.5 as litigation involving an important public interest. "[T]he strong state public policy expressed in CEQA [is] an 'important right' within the meaning of section 1021.5." (*Schwartz v. City of Rosemead* (1984) 155 Cal.App.3d 547, 558; accord, *Healdsburg Citizens for Sustainable Solutions v. City of Healdsburg* (2012) 206 Cal.App.4th 988, [ensuring compliance with CEQA involves an important public interest]; see also *Woodland Hills Residents Assn., Inc. v. City Council*, *supra*, 23 Cal.3d 917, at p. 936, fn. 11 [listing federal cases finding environmental protection may involve important rights].)

B. *Standard of Review*

Generally, an appellate court reviews a trial court decision concerning an award of attorney fees pursuant to section 1021.5 for an abuse of discretion. (*Collins v.*

6

*City of Los Angeles* (2012) 205 Cal.App.4th 140, 152.)  OVSD argues the proper standard of review is de novo, citing *Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, and *Conservatorship of Whitley*, *supra*, 50 Cal.4th 1206, in support of its contention.

In *Connerly v. State Personnel Bd.*, *supra*, 37 Cal.4th 1169, the plaintiff challenged the constitutionality of a number of statutes prohibiting governmental preference based on "race, sex, and other categories." (*Id.* at p. 1172.)  When the state did not defend the constitutionality of the statutes, certain advocacy groups joined the action as amici curiae and defended the action on the merits.  During the litigation, amici curiae were redesignated as real parties in interest.  After Connerly prevailed on his writ petition, he sought and was awarded attorney fees against the advocacy groups.  The issue on appeal was whether the advocacy groups were "opposing parties," under section 1021.5.  (*Ibid.*)

As in the present case, the parties in *Connerly* disagreed on the proper standard of review.  The Supreme Court stated the standard:  "'On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion.  However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law.'" (*Connerly v. State Personnel Bd.*, *supra*, 37 Cal.4th at p. 1175, quoting *Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142.)  That being said, the court noted that when an issue is a mixed question of law and fact, a deferential standard of review may apply "if factual questions predominate." (*Connerly v. State Personnel Bd.*, *supra*, 37 Cal.4th at p. 1175.)  Because the issue in *Connerly* was whether one in the former amici curiae's unusual position could be considered an "opposing party" under the private attorney general statute, a question of law was presented requiring de novo review.  (*Id*. at pp. 1175-1176.)

7

As noted above in section A, *ante*, in determining whether to award attorney fees pursuant to section 1021.5, courts should consider "the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate." (§ 1021.5.) In *Conservatorship of Whitley*, *supra*, 50 Cal.4th 1206, the conservator of her developmentally disabled brother successfully litigated an issue involving the procedure to be followed when there is an objection to the transfer of a conservatee's placement. (*Id*. at p. 1211.) The conservator prevailed and filed a motion for attorney fees under section 1021.5. The North Bay Regional Center opposed the motion and argued the conservator had a personal interest in blocking her brother's transfer and the financial burden of litigating the matter was "not out of proportion to her personal interest" in the litigation. (*Conservatorship of Whitley*, *supra*, 50 Cal.4th at p. 1213.)

The Supreme Court granted review to determine "whether a litigant's nonpecuniary interests can disqualify him or her from eligibility under section 1021.5." (*Conservatorship of Whitley*, *supra*, 50 Cal.4th at pp. 1213-1214.) That issue required the court to construe section 1021.5. Thus, the question presented was one of law and as such, required de novo review. (*Conservatorship of Whitley*, *supra*, 50 Cal.4th at p. 1214.)

This case does not require us to construe section 1021.5. The trial court denied OVSD's request for attorney fees because it concluded there was evidence OVSD had a pecuniary interest in filing the lawsuit and the costs incurred in the lawsuit were not out of proportion with that pecuniary interest. It has already been determined that a party's pecuniary interest in the litigation itself does not disqualify a successful plaintiff from recovering attorney fees under section 1021.5. (*Lyons v. Chinese Hospital Assn.* (2006) 136 Cal.App.4th 1331, 1352.) "'If the party claiming fees has a pecuniary interest in the outcome of the lawsuit, the issue is whether the financial burden placed on the party is out of proportion to its personal stake in the lawsuit.' [Citations.]" (*Ibid*.)

8

Whether the financial burden of the litigation was out of proportion to the financial benefit to OVSD and its constituents is not a question of law. (*Children & Families Com. of Fresno County v. Brown* (2014) 228 Cal.App.4th 45, 58.) Neither is whether a plaintiff has a pecuniary interest in the litigation. Accordingly, we review the trial court's decision for an abuse of discretion.

C. *The Trial Court Erred in Finding OVSD Had a Pecuniary Interest in the Litigation.*

Section 1021.5 is an exception to the American rule whereby litigants bear their own attorney fees. (*Graham v. DaimlerChrystler Corp.* (2004) 34 Cal.4th 553, 565.) Attorney fees may be awarded pursuant to section 1021.5 to a party that has prevailed in an action resulting in the enforcement of an important right affecting the public interest.[2] (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 250-251.) Section 1021.5 contains three factors that must each be established by a successful plaintiff. (*City of Maywood v. Los Angeles Unified School Dist.* (2012) 208 Cal.App.4th 362, 429.) Those are: "(a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." (§ 1021.5; *Vasquez v. State of California*, *supra*, 45 Cal.4th at p. 251.) The third requirement involves two additional considerations: """"whether private enforcement was necessary and whether the financial burden of private enforcement warrants subsidizing the successful party's attorneys."' [Citations.]" (*Conservatorship of Whitley*, *supra*, 50 Cal.4th at pp. 1214-1215.) Historically, only private parties were eligible for an award of attorney fees

_____

[2] "[T]he terms 'prevailing party' and 'successful party,' as used in section 1021.5, are synonymous. [Citations.]" (*Graham v. DaimlerChrysler Corp.*, *supra*, 34 Cal.4th at p. 570.)

9

pursuant to section 1021.5, but in 1993, the Legislature amended the section to authorize an award of attorney fees to a prevailing public entity against another public entity when the former sues the latter to enforce an important public right. (See Historical and Statutory Notes, 18A West's Ann. Code of Civ. Proc. (2007 ed.) foll. § 1021.5, p. 83.)

To sum up, a party is entitled to attorney fees pursuant to section 1021.5 when it has demonstrated the litigation: "(1) served to vindicate an important public right; (2) conferred a significant benefit on the general public or a large class of persons; and (3) imposed a financial burden on plaintiffs which was out of proportion to their individual stake in the matter. [Citations.]" (*Baggett v. Gates* (1982) 32 Cal.3d 128, 142, fn. omitted.)

OVSD argues it had strong nonpecuniary interests in initiating this litigation, but no pecuniary interest in the litigation. It reasons that because no project had been submitted for approval at the time the City approved the FEIR, the possibility that OVSD would ever have to spend a substantial amount of its funds (over $2 million) to reopen a school was purely speculative. We agree. Given there was no project submitted by any contractor to the City to build *anything* in the area covered by the FEIR, much less any project consistent with the nonexistent project considered in the FEIR, OVSD was not faced with a reasonably foreseeable likelihood of having to use funds from its budget to bring the closed facility up to code and to cover other expenses related to reopening a closed school. The plan considered in the FEIR appears to have considered using Lichter's land, but at the October 25, 2011 planning commission meeting before adoption of the FEIR, Lichter said he did not want to participate in such an extensive project.

The possibility that OVSD would have to someday expend over $2 million to reopen a closed school based on the purported plan considered in the FEIR is too speculative to be considered a financial incentive for contesting the FEIR. For OVSD to be faced with the *possibility* of having to expend funds to reopen the closed school based

10

as a result of the City adopting the FEIR, (1) Lichter would have to change his mind and sell his property; (2) some person or entity would have to make arrangements with Decron concerning the use of its property in a project, (3) a builder would have to propose a project along the lines considered in the FEIR, and (4) submit the same or similar project plan to the City. At the time OVSD filed its petition for a writ of mandate challenging the certification of the FEIR, OVSD had no reason to believe any such scenario was imminent, or even in the works. When OVSD filed the petition below, it was not faced with an immediate prospect of having to expend any funds based on the approval of the FEIR.

The costs incurred by OVSD in litigating this matter transcended any speculative pecuniary interest it had in the litigation. An award of attorney fees pursuant to section 1021.5 is appropriate "when the necessity for pursuing the lawsuit placed a burden on the plaintiff out of proportion to his individual stake in the matter." (*Galante Vineyards v. Monterey Peninsula Water Management Dist.* (1997) 60 Cal.App.4th 1109, 1126, citing *Woodland Hills Residents Assn., Inc. v. City Council*, *supra*, 23 Cal.3d at p. 941.) Thus, even if OVSD had a pecuniary interest in bringing an action to decertify the FEIR, OVSD would not automatically be ineligible for an award of attorney fees. Entitlement to an award of attorney fees turns "'on a comparison of the [plaintiff's] private interests with the anticipated costs of suit. . . .'" (*Galante Vineyards v. Monterey Peninsula Water Management Dist.*, *supra*, 60 Cal.App.4th at pp. 1126-1127.)

Had the City approved the FEIR, adopting a project that had been submitted to it and it was evident OVSD would have to expend over $2 million as a result of the certification of the FEIR, the more than $127,000 OVSD expended in litigation may have been reasonable in relation to OVSD's more than $2 million interest in the matter. But when there was no project submitted to the City for approval, no project was approved by the City, and one of the purported landowners previously disavowed any desire to build a project such as the nonexistent project considered by the City, the

11

possibility that OVSD would ever be faced with the $2 million expenditure is so speculative that expending over $127,000 in litigating the propriety of the FEIR transcended any pecuniary interest OVSD had in the litigation. (See *Galante Vineyards v. Monterey Water Peninsula Management Dist.*, *supra*, 60 Cal.App.4th at pp. 1126-1127.) In other words, OVSD's speculative, if any, pecuniary interest was insufficient "to justify the litigation in economic terms." (*Conservatorship of Whitley*, *supra*, 50 Cal.4th at p. 1211.)

As noted above, section 1021.5 provides "'an incentive for . . . plaintiffs to bring public interest suits when their personal stake in the outcome is insufficient to warrant incurring the cost of litigation.' [Citation.]" (*Conservatoship of Whitley*, *supra*, 50 Cal.4th at p. 1221.) The intent of section 1021.5 is served by awarding OVSD attorney fees in this matter.

### 1. *Significant Benefit to the General Public*

As a separate ground for affirming the order denying OVSD attorney fees, the City argues the case did not confer a significant benefit on the general public. (See § 1021.5 [attorney fee award requires a showing the action resulted in a "significant benefit . . . has been conferred on the general public of a large class of persons"].) While we have the ability to affirm a judgment on grounds other than those relied upon by the trial court (*Flagship Theaters of Palm Desert, LLC v. Century Theaters, Inc.* (2011) 198 Cal.App.4th 1366, 1377, fn. 7), it does not appear the trial court considered the issue of whether a significant benefit was conferred on the public. Consequently, it is appropriate to remand the matter to the trial court to make that determination in the first instance. We therefore reverse the trial court's order denying OVSD attorney fees as against the City and remand the matter to the superior court for a hearing on OVSD's motion for attorney fees pursuant to section 1021.5.

12

## 2. *Decron is Not Subject to OVSD's Motion for Attorney Fees.*

Decron argues that even if OVSD is entitled to attorney fees pursuant to section 1021.5, such an order cannot be made against a private entity (i.e., Decron). In *People ex rel. Cooper v. Mitchell Brothers' Santa Ana Theater* (1985) 165 Cal.App.3d 378, the city attorney for Santa Ana brought a lawsuit against the Mitchell Brothers' Theater and, having prevailed on certain issues, sought attorney fees under section 1021.5. (*People ex rel. Cooperv. Mitchell Brothers' Santa Ana Theater*, *supra*, 165 Cal.App.3d at p. 382.) On appeal, Santa Ana's request for attorney fees was denied because section 1021.5 provided in pertinent part: "'*With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities . . . .*'" (*People ex rel. Cooper v. Mitchell Brothers' Santa Ana Theater*, *supra*, 165 Cal.App.3d at pp. 385-386; see Stats. 1977, ch. 1197, § 1.)

In 1993, the Legislature amended section 1021.5 to permit a public entity to recover attorney fees under that section, but only against other public agencies. "With respect to actions involving public entities, this section applies to allowances against, *but not in favor of, public entities . . . .*" (§ 1021.5, italics added; Stats. 1993 ch. 645, § 2.) "This bill would permit award of attorney's fees to public entities under the above stated provisions, *if the award is against another public entity*." (Sen. Floor Analysis of Sen. Bill No. 764 (1993-1194 Reg. Sess.) May 26, 1993, italics added.) Thus, it is evident that section 1021.5 does not authorize a court to order a private entity to pay a public agency's attorney fees. Accordingly, Decron is not a proper party to OVSD's motion for an award of attorney fees pursuant to section 1021.5. Therefore, we affirm the trial court's order denying OVSD's motion for attorney fees as to Decron.

13

### III

### DISPOSITION

The order denying OVSD attorney fees is reversed as to the City and affirmed as to Decron. The matter is remanded to the superior court for a determination of the amount of attorney fees, if any, to be awarded OVSD and to be paid by the City. Decron shall recover its costs on appeal from OVSD. OVSD shall recover from the City its costs on appeal attributed to its efforts to overturn the trial court's denial of attorney fees to be paid by the City.

MOORE, ACTING P. J.

WE CONCUR:

ARONSON, J.

IKOLA, J.