OSCN Found Document:STITT V. DRUMMOND

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 STITT V. DRUMMOND
2025 OK 82
Case Number: 122662
Decided: 11/12/2025
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 82, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

J. KEVIN STITT, in his capacity as Governor of the State of Oklahoma, et al., Plaintiffs/Appellants,
v.
GENTNER DRUMMOND, in his capacity as Attorney General of the State of Oklahoma, Defendant/Appellee.

¶0 The Oklahoma County District Court held that agency heads may not concurrently serve as Cabinet Secretaries under Oklahoma's prohibition against holding dual office. We hold that 74 O.S § 10.3 expressly provides that agency heads may serve as Cabinet Secretaries.

DISTRICT COURT'S ORDER REVERSED; CAUSE REMANDED WITH INSTRUCTIONS TO ENTER DECLARATORY JUDGMENT

Benjamin M. Lepak, Oklahoma City, Oklahoma, for Plaintiffs/Appellants

Trevor S. Pemberton, Oklahoma City, Oklahoma, for Plaintiffs/Appellants

Ellen Carr, Oklahoma City, Oklahoma, for Defendant/Appellee

Garry M. Gaskins II, Oklahoma City, Oklahoma, for Defendant/Appellee

Will Flanagan, Oklahoma City, Oklahoma, for Defendant/Appellee

KUEHN, V.C.J.:

¶1 Since 1986, when legislation authorizing creation of a Governor's Cabinet was passed, Oklahoma Governors have from time to time asked agency heads to serve as Cabinet Secretaries. Oklahoma law generally prohibits individuals from holding more than one State office at the same time, unless a statutory exception applies. 51 O.S. § 6

I. Background

¶2 Governor Stitt asked several agency heads to serve in his Cabinet. Subsequent to those appointments, a state senator requested an Attorney General's Opinion, essentially asking whether a person may simultaneously hold multiple State offices. In response, Attorney General Drummond issued AG Opinion 2024-5, which found that Cabinet Secretaries are not exempt from Oklahoma's prohibition against holding dual office and, therefore, cannot simultaneously serve as agency heads without violating Title 51, Section 6. This Opinion has the force and effect of law until overturned by a court of competent jurisdiction. See State ex rel. Fent v. State ex rel. Okla. Water Res. Bd., 2003 OK 2966 P.3d 432

¶3 Governor Stitt filed a petition for declaratory relief in Oklahoma County District Court. After a hearing, the district court ruled in favor of the Attorney General, finding that Cabinet Secretaries are subject to Oklahoma's prohibition against holding dual office. The court concluded that the expanded authority granted to Cabinet Secretaries in 2021 under Senate Bill 913, particularly the power to veto administrative rules, qualifies as an exercise of sovereign power, thereby making Secretaries officers under Oklahoma law. As a result, the court determined that agency heads who also serve as Cabinet Secretaries are holding two offices simultaneously, in violation of Title 51, Section 6. The district court rejected the argument that Title 74, Section 10.3 creates an exception, reasoning that the statute does not expressly override the prohibition against holding dual office and cannot be read to do so by implication. Governor Stitt appealed. 

II. Standard of Review

¶4 Legal questions involving statutory interpretation are questions of law subject to de novo review. Bailey v. State ex rel. Bd. of Tests for Alcohol & Drug Influence, 2022 OK 50510 P.3d 845de novo review, an appellate court has plenary, independent, and non-deferential authority to determine whether the trial tribunal erred in its legal rulings. Snow v. Town of Calumet, 2022 OK 63512 P.3d 369State ex rel. Protective Health Servs. State Dep't of Health v. Vaughn, 2009 OK 61222 P.3d 1058

III. Discussion

A. Cabinet Secretaries Are Officers Under Oklahoma Law

¶5 The Court employs a three-part test for determining whether a State position is an office: (1) was the specific position created or authorized by law; (2) does the law impose certain definite duties upon the position holder; and (3) do the duties imposed "involve the exercise of some portion of the sovereign power." Okla. City v. Century Indem. Co., 1936 OK 58962 P.2d 94

¶6 Title 74, Section 10.3(B) sets out the primary duties of a Cabinet Secretary:

1.Advise the Governor of any policy changes or problems within the area they represent;

2.Advise the entities represented of any policy changes or problems as directed by the Governor; and

3.Coordinate information gathering for the Legislature as requested.

74 O.S. § 10.3Century Indemnity Company framework. However, those roles have always been flexible. In 2021, the Legislature passed Senate Bill 913, granting Cabinet Secretaries the unilateral ability to approve or veto administrative rules proposed by the State agencies under their purview. 74 O.S. § 303(A)(6). In addition, Executive Orders by several Governors, past and present, have given Cabinet Secretaries authority to oversee agency operations, including rulemaking, hiring, grant applications, or expenditures. 

B. Is Not Affected By Oklahoma's Prohibition Against Holding Dual Office 

¶7 We have established that Cabinet Secretaries are officers. The Attorney General argues that this status prevents an agency head from serving in the Governor's Cabinet, because a person cannot hold two state offices. Title 51, Section 6 provides: "Except as may be otherwise provided, no person holding an office under the laws of the state . . . shall, during the person's term of office, hold any other office . . . under the laws of the state." 51 O.S., § 6

¶8 It is well within the Legislature's power to pass a law authorizing a person holding one office to assume the duties of another office without mentioning Section 6 at all. The Governor contends that Title 74, Section 10.3 authorizes agency heads to serve concurrently as Cabinet Secretaries. We agree. Section 10.3 does not merely create an exception to Section 6. It is, instead, a complete and freestanding exercise of Legislative authority granting the Governor the power of appointment over his Cabinet, with the advice and consent of the Senate.

¶9 Section 10.3 provides, in relevant part:

A cabinet Secretary may be appointed as a position funded by the Office of the Governor from funds available to that office, or appointed as a cabinet Secretary from among the agency heads within the cabinet area.

. . .

The cabinet Secretaries shall serve at the pleasure of the Governor, however, the appointment or removal of a cabinet Secretary who is also an agency head shall not otherwise affect the status of the other duties of the agency head.

74 O.S. §§ 10.3Bailey v. State of Okla. ex rel. Serv. Okla., 2025 OK 34572 P.3d 1026 A statute does not become ambiguous over time; language does not become ambiguous because lawyers may propose differing interpretations of it; we will not create an ambiguity where none exists. Read together, Title 51, Section 6 and Title 74, Section 10.3 complement, not contradict, one another.

C. The Attorney General's Interpretation Renders Superfluous

¶10 Despite the plain language of Title 74, Section 10.3, the Attorney General asserts that the statute cannot survive the statutory bar against holding dual office. Instead, the Attorney General contends: (1) because the Governor may still appoint non-officer agency heads as Cabinet Secretaries, Section 10.3 is not superfluous; (2) because Section 10.3 was last amended prior to the enactment of Senate Bill 913, the Legislature could not have anticipated that Cabinet Secretaries would later be classified as officers; and (3) the Legislature has the authority to expressly exempt Cabinet Secretaries from Oklahoma's prohibition against holding dual office if it so chooses.

1. Agency Heads are Officers Absent Statutory Authority to the Contrary

¶11 The Attorney General asserts that the Governor may still appoint non-officer agency heads as Cabinet Secretaries, thus avoiding any conflict. However, the Attorney General fails to cite any statutory basis for distinguishing between officer and non-officer agency heads, nor does the Attorney General identify any statutory provision that prohibits agency heads from qualifying as officers. In the absence of such authority, no basis exists to exclude agency heads from classification as officers, leaving only the conclusion that they must be considered as such. And as a practical matter, neither party has offered this Court any example of a current agency head who does not have duties which qualify that position as an officer.

2. The Plain Statutory Text Controls Over Speculative Legislative Intent

¶12 The Attorney General asserts that, because Section 10.3 was last amended prior to the enactment of Senate Bill 913, the Legislature could not have anticipated that Cabinet Secretaries would later be classified as officers. 

¶13 It is a cardinal principle of statutory construction that, if possible, every word and every provision is to be given effect (verba cum effectu sunt accipienda). Estes v. ConocoPhillips Co., 2008 OK 21184 P.3d 518Raymond v. Taylor, 2017 OK 80412 P.3d 1141Moran v. City of Del City, 2003 OK 5777 P.3d 588

¶14 The Attorney General's interpretation of Title 51, Section 6 would nullify the relevant language in Title 74, Section 10.3, as it would preclude any circumstance in which that language could be given effect. Because all Cabinet Secretaries and agency heads qualify as officers, the Attorney General's reading of Section 6 would make it impossible for any agency head to concurrently serve as a Cabinet Secretary--directly contradicting the express language of Section 10.3. Accordingly, we reject the Attorney General's interpretation, as it would render the language in Section 10.3 meaningless and without effect. And, as a practical matter, that interpretation is not supported by facts. For decades, Governors have expanded the duties of individual Cabinet Secretaries by Executive Order, functionally making them officers. Not only could the Legislature have anticipated this, it should have done so, particularly since the Legislature had the benefit of Attorney General Opinions approving this practice. See OK AG Opinions 2005-28, 2000-54.

3. Existing Law Governs

¶15 The Attorney General asserts that the Legislature has the authority to expressly exempt Cabinet Secretaries from Oklahoma's prohibition against holding dual office if it so chooses. We agree. The question before the Court is not whether the Legislature could create this exemption in the future, but if it already has. We find that it has.

¶16 If the Legislature wishes to change the unambiguous meaning of Section 10.3, it may do so through legislative action. The Legislature retains full authority to amend, repeal, or enact new legislation addressing the issue, including through overriding a gubernatorial veto under Article VI, Section 11 of the Oklahoma Constitution. However, absent such legislation, Title 74, Section 10.3 must be given full effect as written.

Conclusion

¶17 Under Oklahoma law, no individual may hold more than one State office unless an exception applies. While Cabinet Secretaries now qualify as officers due to expanded statutory authority, Title 74, Section 10.3 expressly provides that agency heads may serve concurrently as Cabinet Secretaries. This statutory language must be given effect. We read the plain language of Section 10.3 in conjunction with the prohibition against holding dual office in Title 51, Section 6, giving effect to each. This preserves the coherence of the statutory scheme and avoids rendering Section 10.3 superfluous. Accordingly, we reverse the district court's order and remand with instructions to enter a declaratory judgment consistent with this Opinion.

DISTRICT COURT'S ORDER REVERSED; CAUSE REMANDED WITH INSTRUCTIONS TO ENTER DECLARATORY JUDGMENT

CONCUR: ROWE, C.J., KUEHN, V.C.J., and GURICH, DARBY, KANE (by separate opinion) and JETT, JJ., and PRINCE, S.J.

DISSENT: COMBS (by separate opinion) J., and WISEMAN, S.J.

DISQUALIFIED: WINCHESTER, J.

RECUSED: EDMONDSON, J.

FOOTNOTES

A cabinet Secretary may be appointed as a position funded by the Office of the Governor from funds available to that office, or appointed as a cabinet Secretary from among the agency heads within the cabinet area.

. . .

The cabinet Secretaries shall serve at the pleasure of the Governor, however, the appointment or removal of a cabinet Secretary who is also an agency head shall not otherwise affect the status of the other duties of the agency head.

Allen v. State ex rel. Bd. of Trustees of Okla. Unif. Ret. Sys. for Justs. & Judges, 1988 OK 99769 P.2d 1302

See, e.g., Exec. Order No. 2023-8, OAC 1:2023-8 (Sept. 13, 2023); Exec. Order No. 2023-4, OAC 1:2023-4 (Feb. 28, 2023); Exec. Order No. 2019-14, OAC 1:2019-14 (April 16, 2019); Exec. Order No. 2019-40, OAC 1:2019-40 (Sept. 23, 2021).

See, e.g., 74 O.S.Supp.2023, § 520725 O.S. § 98.42 O.S.Supp.2023, § 400574 O.S. § 120710 O.S.Supp.2024, § 64070 O.S. § 1210.40122 O.S.Supp.2024, § 109440 O.S.Supp.2023, § 90352 O.S. § 288.470 O.S. § 4663

 

 

KANE, J., concurring specially:

¶1 In the present case, the Attorney General was requested by a member of the Legislature to render his opinion on a question of law, as is his statutory duty. 74 O.S. § 18bIndep. Sch. Dist. No. 12 of Okla. Cty. v. State ex rel. Bd. of Ed., 2024 OK 39565 P.3d 23

¶2 I write separately to note that the trial judge and more than one member of our Court read the law one way, while the majority read the law another. In other words, like many legal issues that come before this Court, this was an unanswered question with principled points in favor of each position. I commend counsel for both sides for the clarity and precision of their competing arguments.

 

 

J. KEVIN STITT, in his capacity as Governor of the State of Oklahoma, and BLAYNE ARTHUR, in her capacity [sic] as Secretary of Agriculture and Commissioner of the Department of Agriculture, Food, and Forestry, Plaintiffs/Appellants,
and
SHELLEY ZUMWALT, in her capacity [sic] as Secretary of Tourism, Wildlife, and Heritage and as Executive Director of the Tourism and Recreation Department, and DR. DEBORAH
SHROPSHIRE, M.D., in her capacity [sic] as Secretary of Human Services and as Director of the Department of Human Services, Plaintiffs,
v.
GENTNER DRUMMOND, in his capacity as Attorney General of Oklahoma, Defendant/Appellee

COMBS, J., with whom WISEMAN, S.J., joins, dissenting:

I do not understand how the majority concludes that the language of 74 O.S.2021, § 10.351 O.S.2021, § 6See Majority Op. ¶ 9. When viewed in light of section 10.3's history, the plain meaning of its text, and the litany of state officials--i.e., the Attorney General, the district judge, 94 state representatives, 41 state senators, and myself--who have reached an opposite conclusion, it should be readily apparent to the majority and anyone else looking at the issue in this case that either an ambiguity exists or section 10.3 unambiguously does not create an exemption. I cannot read the statute the way the majority does. The Attorney General's opinion preventing the Governor from appointing agency heads to serve as Cabinet Members in light of recent developments in the law was well-reasoned. The district judge's declaratory judgment in favor of the Attorney General and against the Governor reached the right result. For these reasons, I dissent from the majority's reversal of the district judge's summary judgment.

* * *

¶2 Since 1910, Oklahoma law has contained a general prohibition that forbids public officers from "hold[ing] any other office or be[ing] the deputy of any officer holding any other office." 51 O.S.1941, § 651 O.S.2021, § 6Guthrie Daily Leader v. Cameron, 1895 OK 7141 P. 635A Treatise on the Law of Public Offices and Officers § 1, at 1--2 (1890)). In the case of City of Oklahoma City v. Century Indemnity Co., 1936 OK 58962 P.2d 94

[T]he chief elements of a public office are: (a) The specific position must be created or authorized by law; (b) there must be certain definite duties imposed by law on the incumbent; and (c) they must involve the exercise of some portion of the sovereign power . . . .

Id. ¶ 21, 62 P.2d at 97. "[A] position which has these three elements is presumably an 'office,' while one which lacks any of them is a mere 'employment.'" Id. (quoting Winsor v. Hunt, 243 P. 407, 413 (Ariz. 1926)). The third element is the most important feature distinguishing an office from employment because "the creation and conferring of an office involves a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public." Guthrie Daily Leader, 1895 OK 71supra, § 4, at 5). This requires "that some portion of the sovereignty of the country, either legislative, executive, or judicial, attaches for the time being, to be exercised for the public benefit. Unless the powers conferred are of this nature, the individual is not a public officer." Id. (quoting Mechem, supra, § 4, at 5). From this definition of "office," we learn that one person should not be vested with two types of sovereign power. The principle behind the prohibition against dual office holding is predicated upon both the separation of powers, see, e.g., Okla. Const. art. IV, § 1, and the belief that the public will be best served if its public officers are able to devote their full time and attention to one office.

¶3 There are exceptions to this general rule, which the preliminary language of the statute even acknowledges: "Except as may be otherwise provided, no person holding an office . . . ." 51 O.S.2021, § 6See id. § 6(A)(1)--(30). But none of those exceptions in subsection A covers an agency head who also serves as a Cabinet Secretary. That's why the Governor and the majority of this Court point to another statutory provision in a different title of the Oklahoma Statutes--i.e., section 10.3 of the Executive Branch Reform Act of 1986 contained in Title 74, which concerns "State Government." As I've already stated, I don't believe that section 10.3 contains an exception to the general prohibition against dual office holding.

¶4 We must first look at the text of 74 O.S.2021, § 10.3Hall v. Galmor, 2018 OK 59427 P.3d 1052Stricklen v. Multiple Injury Tr. Fund, 2024 OK 1542 P.3d 858Id. In ascertaining meaning, we "determine the ordinary meaning of the words that the Legislature chose in the provisions of law at issue" and "look . . . also at the text of related provisions in the same statute or legislative act, in a manner that achieves full force and effect for each provision." Hall, 2018 OK 59Broadway Clinic v. Liberty Mut. Ins. Co., 2006 OK 29139 P.3d 873Twin Hills Golf & Country Club, Inc. v. Town of Forest Park, 2005 OK 71123 P.3d 5Cox v. State ex rel. Okla. Dep't of Human Servs., 2004 OK 1787 P.3d 607City of Midwest City v. Harris, 1977 OK 7561 P.2d 1357Rath v. LaFon, 1967 OK 52431 P.2d 312

§ 10.3. Cabinet system to be created

A. Within forty-five (45) days of assuming office, each Governor may create a cabinet system for the executive branch of state government. The cabinet system may be an organizational framework created by executive order which includes all executive agencies, boards, commissions, or institutions and their assignments to specific cabinet areas. The cabinet system shall consist of no more than fifteen cabinet areas and each cabinet area shall consist of executive agencies, boards, commissions, or institutions with similar programmatic or administrative objectives. One cabinet area shall consist of the Oklahoma Department of Veterans Affairs, its institutions and other executive agencies, boards, commissions, and institutions which are related to veterans. The Governor's cabinet shall be in effect until the Legislature supersedes each specific cabinet area or department by providing by law for specific cabinet areas or departments, or removes by law the authority of the Governor to create a cabinet area. At any time during the Governor's term of office, the cabinet may be modified at the sole discretion of the Governor subject to Senate confirmation as provided by subsection B of this section.

B. The Governor shall appoint, with the advice and consent of the Senate, a Secretary to head each cabinet area. The Secretary appointee for the cabinet area consisting of the Oklahoma Department of Veterans Affairs and other related veterans entities shall be an honorably discharged veteran and be eligible to receive benefits from the United States Department of Veterans Affairs. A cabinet secretary may be appointed as a position funded by the Office of the Governor from funds available to that office, or appointed as a cabinet Secretary from among the agency heads within the cabinet area. The cabinet Secretaries shall:

1. Advise the Governor of any policy changes or problems within the area they represent;

2. Advise the entities represented of any policy changes or problems as directed by the Governor; and

3. Coordinate information gathering for the Legislature as requested.

C. The cabinet Secretaries shall serve at the pleasure of the Governor, however, the appointment or removal of a cabinet Secretary who is also an agency head shall not otherwise affect the status of the other duties of the agency head. Whenever a Secretary position becomes vacant, the Governor shall appoint a successor within thirty (30) calendar days pursuant to the provisions of Subsection B of this section. If the Legislature is not in session at the time of appointment it shall be subject to the advice and consent of the Senate upon convening of the next regular session of the Legislature.

74 O.S.2021, § 10.3See Majority Op. ¶ 9 (only quoting those two sentences in isolation); ROA, Pet'rs' Mot. Partial Summ. J. 1--2, 6 (same). Let's look at what those provisions actually say in context. Subsection B has four sentences covering four topics: (1) the first sentence establishes the appointment process for Cabinet Secretaries; (2) the second sentence sets forth specific qualifications that must be met by the Cabinet Secretary over veterans affairs--a position that must be included in every Governor's cabinet per subsection A; (3) going out of order, the fourth sentence lays out some general administrative duties for Cabinet Secretaries, i.e., advising and information gathering; and, (4) finally, the third sentence--upon which the majority and the Governor rely--discusses how the salary of a Cabinet Secretary will be funded, either through funds available to the Office of the Governor or, if the Cabinet Secretary also happens to be an agency head, through funds available to that agency. Besides that third sentence of subsection B, no other provision within the Executive Branch Reform Act of 1986 or other applicable law provides for the funding of the position of Cabinet Secretary. Looking at subsection C, there are three sentences covering three topics: (1) the first sentence provides that Cabinet Secretaries are at-will employees of the Governor; (2) the first sentence also specifies that a Governor's removal of a Cabinet Secretary who happens to be an agency head--and for that matter, his or her appointment too--does not impact their status as an agency head or the duties they must carry out as an agency head; and (3) the second and third sentences establish the process for filling a vacancy in the position of Cabinet Secretary due to removal, death, resignation, impeachment, etc.--including what must be done to obtain "the advice and consent of the Senate" in the event the Legislature is not in session when the Governor appoints a replacement. Although the third sentence of subsection B and the first sentence of subsection C acknowledge the possibility of one person serving as both agency head and Cabinet Secretary, they do not discuss any exception to 51 O.S.2021, § 6explicitly say that an agency head can always serve as a Cabinet Secretary regardless of 51 O.S.2021, § 6implicit exception into those sentences. But an exception is not what those sentences are about. Furthermore, the majority's attempt to insert an implicit exception into those sentences should not be seen as creating an ambiguity--particularly when our jurisprudence has repeatedly acknowledged a "cardinal rule of statutory construction" that "courts should not read into a statute exceptions not made by the Legislature. It has been well said that 'seeking hidden meaning at variance with the language use is a perilous undertaking which is quite as apt to lead to an amendment of law by judicial construction as it is to arrive at the actual thought in the legislative mind.'" Seventeen Hundred Peoria, Inc. v. City of Tulsa, 1966 OK 155422 P.2d 840City of Bristow ex rel. Hedges v. Groom, 1944 OK 223Statutes § 217, at 961, 963 (William M. McKinney et al. eds., 1929)); accord Antini v. Antini, 2019 OK 20440 P.3d 57Hall, 2018 OK 59Martin ex rel. S.M. v. Phillips, 2018 OK 56422 P.3d 143Oglesby v. Liberty Mut. Ins. Co., 1992 OK 61832 P.2d 834Rice v. Rice, 1988 OK 83762 P.2d 925Udall v. Udall, 1980 OK 99613 P.2d 74251 O.S.2021, § 6See Majority Op. ¶ 9.

¶5 Had the Legislature wanted to include an explicit exception, it knows how to do so. As already mentioned, the statute containing the prohibition against dual office holding contains more than thirty exceptions of its own, as demonstrated in this excerpt of just five such exceptions:

§ 6. Officers and deputies not to hold other offices--Exemptions

A. Except as may be otherwise provided, no person holding an office under the laws of the state and no deputy of any officer so holding any office shall, during the person's term of office, hold any other office or be the deputy of any officer holding any office, under the laws of the state. The provisions of this section shall not apply to:

1. Notaries public;

2. Members of the State Textbook Committee;

3. County free fair board members;

. . . .

25. Any person who is an assistant district attorney serving as a municipal judge or prosecutor; [and]

. . . .

28. Any member of the state Legislature or any state officer who serves on the board of trustees of the Oklahoma School for the Visual and Performing Arts . . . .

51 O.S.2021, § 6See, e.g., Act of July 12, 1929, ch. 255, § 1, 1929 Okla. Sess. Laws 363, 363 (codified at O.S.1931 § 3424) (creating the exception for notaries public). Moreover, the Legislature has included explicit exceptions to section 6(A)'s prohibition against dual office holding in numerous other statutes over the years. For example, section 98.4 of title 25 of the Oklahoma Statutes has provided since its enactment in 1994 that the "honorary position" of "State Poet Laureate shall not be prohibited because of said appointed position from: 1. Running for and being elected to any office in the State or a political subdivision of the state," 25 O.S.2021, § 98.4notwithstanding the provisions of Section 6 of Title 51 of the Oklahoma Statutes." Act of June 4, 1999, ch. 317, § 4, 1999 Okla. Sess. Laws 1392, 1398 (codified at 52 O.S.Supp.1999, § 288.4shall not be subject to the dual office holding prohibitions set forth in Section 6 of Title 51 of the Oklahoma Statutes." 22 O.S.2024, § 1094shall be exempt from the dual-office-holding provisions of Section 6 of Title 51 of the Oklahoma Statutes." 10 O.S.2024, § 640.1shall possess dual office holding exemption privileges and shall be exempt from any statutory dual office holding prohibitions." 2 O.S.2023, § 4005notwithstanding the provisions of Section 6 of Title 51 of the Oklahoma Statutes." 40 O.S.2023, § 903shall not be considered a state officer for the purposes of Section 6 of Title 51 of the Oklahoma Statutes." Act of May 22, 2023, ch. 274, § 1, 2023 Okla. Sess. Law Serv. 849, 849 (codified at 11 O.S.2023, § 27 104(A)) (emphasis added). These last six examples clearly demonstrate the Legislature's ability to make an explicit exception when they so desire. The absence of similar language in section 10.3 of Title 74 would seem to belie the Governor's arguments and the majority's conclusion that section 10.3 contains an unambiguous exception to the dual-office-holding prohibition.

¶6 The lack of an explicit exception to 51 O.S.2021, § 6

¶7 When the State of Oklahoma drafted its Constitution in 1906, its founders sought to avoid placing too much power in any one person--just as they did when they passed the 1910 statute prohibiting dual office holding. With respect to the executive branch, the Constitution provides that "[t]he Executive authority of the state shall be vested in a Governor, Lieutenant Governor, Secretary of State, State Auditor and Inspector, Attorney General, State Treasurer, Superintendent of Public Instruction, Commissioner of Labor, Commissioner of Insurance and other officers provided by law and this Constitution, each of whom . . . shall perform such duties as may be designated in this Constitution or prescribed by law." Okla. Const. art. VI, § 1(A). Each of these executive officers "[wa]s given certain specified powers and charged with certain specified duties, and while each must operate within the general comprehensive sphere of the executive department, with the Governor as Chief Executive, yet each is endowed with a limited independence and held directly responsible to the electorate"--except for the Secretary of State, see Okla. Const. art. VI, § 1(B)--"for the discharge of its specified duties." Bynam v. Strain, 1923 OK 596218 P. 883Wentz v. Thomas, 1932 OK 63615 P.2d 65

Thus it is plain that the Constitution of Oklahoma vested the executive authority, not as by the Federal Constitution in one official, but in twelve separately named officials and with provision for future legislative vestment of executive authority in "other officers provided by law and this Constitution," "each of whom * * * shall perform such duties as may be designated in this Constitution or prescribed by law," thus evidencing specific instruction, except as otherwise provided for, that these officers were not to perform duties under the direction of the Chief Executive, but to do their duty as outlined in the Constitution and laws. . . .

The Governor has no constitutional power to appoint (except to fill vacancies) or remove any of the other executive officers named in the Constitution (except Bank Commissioner, section 1, art. 14, Const.) They are elective by, and responsible to, the sovereignty for the faithful discharge of their duties. The Governor is not responsible to the sovereignty for their faithful performance of the duty of any of them, except that upon their commission of impeachable offenses he should recommend their impeachment to the Legislature. They can be removed from office only in the manner provided by the people in their Constitution.

Thus it is obvious that the Hamiltonian idea of a centralized form of government by a concentration of all executive authority in one office was not the public policy adopted by the people and expressed in Constitution of Oklahoma. To the contrary, the Constitution of this state embraced the political idea of a plural executive department--one consisting of many executive officers who would obey the law rather than policy of a man who might happen to occupy the position of Governor. 

¶ 123--125, 15 P.2d at 84 (Riley, J., concurring specially) (emphasis added). With this background in mind, it's not surprising to learn that for eighty years Oklahoma's executive branch did not include a Cabinet of secretaries or ministers under the Governor.

¶8 The Oklahoma Constitution remains silent on the permissibility of creating a Cabinet; it would only prohibit the divestiture of powers and duties from constitutionally created executive officers and the reassignment of those powers and duties to Cabinet Secretaries serving and answerable to the Governor. Consequently, the Legislature was at liberty to statutorily create an executive Cabinet, which it did by enacting the Executive Branch Reform Act of 1986, ch. 207, 1986 Okla. Sess. Laws 645, codified at 74 O.S.Supp.1986 §§ 10.174 O.S.Supp.1986, §§ 10supra in my analysis of section 10.3's plain language. Over the years, section 10.3 has been modified here and there, but the only amendments to subsections B and C concerned specifications related to the required Cabinet area covering veteran-related issues. The last amendment to section 10.3 came in 2013, which will be important in our timeline as we assess the historical context of the language in section 10.3(B) and (C).

¶9 From 1986 to 2021, most Cabinet Secretaries only exercised the powers and duties spelled out in section 10.3(B), which--as we've already discussed supra--involved general administrative duties such as "advis[ing]" and "coordinat[ing] information." § 10.3(B). Even the majority recognizes that Cabinet Secretaries' powers were limited "to serv[ing] as advisors and coordinators, roles that lacked the independent authority or sovereign power necessary to classify the position as an officer under the Century Indemnity Company framework." Majority Op. ¶ 6; accord Question Submitted by the Hon. Guy Davis, Okla. H.R., 1988 OK AG 3

¶10 Arguably, it wasn't until 2021--when Cabinet Secretaries were granted new powers to unilaterally approve or veto proposed rules from State agencies under their purview, see Act of Apr. 12, 2021, ch. 11, § 8, 2021 Okla. Sess. Law Serv. 30, 40 (codified at 75 O.S.2021, § 303Century Indemnity test. 51 O.S.2021, § 651 O.S.2021, § 6

¶11 Everything came to a head in 2024, after Senator Mary Boren asked the Attorney General for an opinion regarding whether the same individual could simultaneously serve as the Cabinet Secretary of Transportation, as the Executive Director of the Oklahoma Department of Transportation, and as the Executive Director of the Oklahoma Turnpike Authority. The Attorney General rendered his opinion on February 28, 2024, from which the Governor and several of his Cabinet Secretaries immediately sought relief by filing the underlying action in district court on March 7, 2024. In the meantime, the House resurrected Senate Bill No. 1196 ("SB 1196") from the previous legislative session and introduced a floor substitute that would fix the dual office holding violation created in 2021. SB 1196, 59th Leg., 2d Reg. Sess. (Okla. 2024) (Floor Substitute), available at https:// www.oklegislature.gov/cf_pdf/2023-24%20FLOOR%20AMENDMENTS/House/ SB1196%20FA1%20ECHOLSJO-LRB.PDFSee All House Votes on SB 1196, Okla. State Leg., https://www.oklegislature.gov/cf/2023-24%20SUPPORT%20DOCUMENTS/votes/House/SB1196_VOTES.HTMhttps://www.oklegislature.gov/cf/2023-24%20SUPPORT%20DOCUMENTS/votes/ Senate/SB1196_VOTES.HTM74 O.S. § 10.3Id. Although the majority acknowledges the existence of SB 1196, they attempt to hide the Governor's involvement in its demise by stating simply that "Senate Bill 1196 did not pass, leaving the existing statutes unchanged." Majority Op. ¶ 3 n.2 (emphasis added). They then assert that "[w]hether Senate Bill 1196 supported one interpretation over another is irrelevant." Id. I find it highly relevant insofar as it demonstrates that 135 state legislators either read the law or, at least, acknowledged the possibility that it could be read the same way I read it. That makes 135 state legislators, the Attorney General, the district judge, and myself who read 74 O.S.2021, § 10.3

¶12 The majority's suggestion that my interpretation renders the language of section 10.3(B) and (C) superfluous is doubtful. I would give that language the meaning it always has had.

¶13 For all these reasons, I dissent. I would affirm the district court's summary judgment.

FOOTNOTES

Similarly, the district court's journal entry of judgment attached to Plaintiffs/Appellants' Petition in Error lists all three Cabinet Secretaries who joined the Governor in filing this lawsuit as suing in their singular "capacity as" a Cabinet Secretary and agency head, rather than the grammatically correct plural "capacities as" a Cabinet Secretary and as an agency head.

At this juncture, only one Cabinet Secretary is a party to this appeal, i.e., Blayne Arthur. The Governor withdrew his nomination of Shelley Zumwalt as Cabinet Secretary of Tourism, Wildlife and Heritage on April 26, 2024--less than a month after seeking summary judgment to invalidate the Attorney General's opinion. Letter from J. Kevin Stitt, Governor, State of Oklahoma, to Hon. Greg Treat, President Pro Tempore, Oklahoma Senate, 1 (Apr. 26, 2024) (withdrawing Zumwalt's nomination as a Cabinet Secretary), available at https://www.sos.ok.gov/documents/filelog/97010.pdfOklahoma Tourism Head to Retire After Critical Audit, Oklahoma Voice, Sept. 27, 2024, https://oklahomavoice.com/2024/09/27/oklahoma-tourism-head-to-retire-after-critical-audit/Media Advisory: Dr. Shropshire to Leave Oklahoma Human Services, Aug. 21, 2024, https://oklahoma.gov/okdhs/newsroom/2024/august/comm08202024.htmlDirector of Oklahoma Human Services Department to Leave Agency, Oklahoma Voice, Aug. 20, 2024, https://oklahomavoice.com/briefs/director-of-oklahoma-human-services-department-to-leave-agency/

(3838) § 19. No territorial officer can appoint as his deputy any other territorial or any district officer, nor can a Territorial Treasurer appoint as his deputy any county treasurer, judge of the probate court, ragister [sic] of deeds, sheriff, or county commissioner, nor can either the clerk of the district court, the register of deeds or sheriff appoint as his deputy either of the others or their deputies.

O.S.1890, § 3838; O.S.1893, § 3472. In the state statutes published in 1909, the term "State" was substituted for "territorial" and the phrase "county court" was substituted for "probate court." O.S.1909, § 4805. When the Legislature authorized the compilation, annotation, and revision of the statutes in 1910, the Code Commissioners revised this provision to "[s]implif[y]" it "by making language general, instead of attempting to enumerate the different classes of officers." O.S.1910, § 4274 (History); see also Reviser's Note in O.S.1910, May 1, 1911 (following the Foreword and the Certificates of Authentication at the beginning of Volume I and explaining that the Code Commissioners "prepared a history of the various sections, indicating the statute when adopted and their source in Oklahoma, as well as a note briefly setting forth the nature of the revision work in relation to each section"). The Code Commissioners' revisions were thereafter adopted wholesale by the Legislature in the Act Adopting Revised Laws of Oklahoma, ch. 39, § 1, 1911 Okla. Sess. Laws 70, 70--71.

2000 OK AG 5451 O.S.Supp.1999, § 674 O.S.1991, § 2.2See 2000 OK AG 5451 O.S.2021, § 6

The majority insinuates that the Attorney General has twice found that a particular Cabinet Secretary was exercising sovereign power, insofar as the majority cites two Attorney General opinions. See Majority Op. ¶ 6. The citation to the 2005 Attorney General opinion, however, is nothing more than a recitation of the previous findings from the 2000 Attorney General opinion. It's not a separate incident where the Attorney General found that another Cabinet Secretary was exercising sovereign power. In fact, it was quite the opposite. The Attorney General specifically found in 2005 that the Cabinet Secretary of Finance and Revenue had "no specific statutory duties . . . . [and] no duties which involve the exercise of sovereign power," such that "the position of Secretary of Finance and Revenue is not an office, [and] there [wa]s no dual office holding violation in holding both that position and a state office, such as State Treasurer." Question Submitted by the Hon. Gus Blackwell, State Rep., Dist. 61, 2005 OK AG 28

See Majority Op. ¶ 6. The Governor's district court briefing even mentioned an executive order from 2015. Either way, the executive orders being relied upon post-dated the last amendment to section 10.3 in 2013. Thus, the exercise of sovereign power by Cabinet Secretaries was not widespread in 1986--when the Legislature drafted the language in section 10.3(B) and (C) to which the majority and the Governor point as creating an exception--or in 2013--when the Legislature last amended any part of section 10.3.

The majority's citation of a 1996 Attorney General opinion as proof that Cabinet Secretaries were allowed to exercise sovereign power is inapposite. That opinion dealt with whether the Governor could delegate his power to implement a state hiring freeze to other executive agents, including Cabinet Secretaries, to administer the approval or denial of requests for exceptions to the hiring freeze. See Question Submitted by the Hon. Cal Hobson, State Sen., Dist. 16, 1995 OK AG 12

 
 
 
 
 
 
 
 
 
 The Oklahoma Supreme Court
 2100 N. Lincoln Blvd., Suite 1
 Oklahoma City, OK 73105